Abby ALLEN and Walter Moore,
Appellants–Plaintiffs,

v.

CLARIAN HEALTH PARTNERS,
INC., Appellee–Defendant.

No. 49A02–1011–CT–1174.

Court of Appeals of Indiana.

Oct. 12, 2011.

Jerry Garau, Garau Germano Hanley & Pennington, P.C., Indianapolis, IN, Attorney for Appellants.

David J. Mallon, Edward P. Steegmann, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Abby Allen and Walter Moore appeal the trial court's judgment dismissing their complaint against Clarian Health Partners, Inc. ("Clarian") for failure to state a claim upon which relief can be granted, pursuant to Indiana Trial Rule 12(B)(6). The parties raise numerous arguments for our review, which we restate as the following five issues on appeal:

1. Whether the complaint states a claim when it alleges that Clarian breached its contracts with Allen and Moore by charging them unreasonable fees;

2. Whether the contracts unambiguously require Allen and Moore to pay Clarian's fees;

3. Whether the complaint is an improper attempt to invoke judicial review of contract consideration;

4. Whether the complaint sufficiently alleges damages that have been or will be suffered by Allen and Moore based on Clarian's alleged breach of the contracts; and

5. Whether the judiciary is an appropriate forum to determine the reasonable value of medical expenses.

We hold that Allen and Moore's complaint is supported by more than 120 years of Indiana common law and states a claim for breach of contract. Accordingly, we reject Clarian's proffered reasons for why the complaint should be dismissed for failure to state a claim. We reverse and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

According to the complaint, in June of 2008 Allen received medical treatment

from Clarian at Clarian North Medical Center in Carmel ("Clarian North"). Allen did not have insurance coverage either through a private insurer or a government program for the services provided by Clarian. Before medical services were provided, Allen signed a standard form of contract, drafted by Clarian, in which Allen agreed to pay her account with Clarian following her treatment. The contract did not specify a price or fee schedule for the services that were to be provided. Specifically, the contract stated that, "[i]n consideration of services delivered . . ., the undersigned guarantees payment of the account, and agrees to pay the same upon discharge if such account is not paid by a private or governmental insurance carrier." Appellants' App. at 17.

In May of 2009, Moore received medical treatment from Clarian at Clarian North. Moore did not have private or government-issued insurance coverage for that treatment. Before medical services were provided, Moore signed Clarian's standard contract, in which he "guarantee[d] payment of the account. . . ." *Id.* Moore's contract did not specify a price or fee schedule for the services that were to be provided.

Following each of their treatments, Clarian billed Allen and Moore in accordance with Clarian's "chargemaster" rates.[1] *Id.* at 7, 9. Clarian charged Allen a principal amount of $15,641.64 and charged Moore a principal amount of $1,138. If Allen had been insured, Clarian would have accepted payment of $7,308.78 for the same services. If Moore had been insured, Clarian would have accepted "significantly less" than the amount billed. *Id.* at 9. And if either Allen or Moore had been an Indiana prisoner, Clarian would have accepted not more than 65% of the chargemaster rate

pursuant to Indiana Code Section 11–12–5–5.5(f). Clarian eventually submitted Allen's bill to a collection agency.

On May 6, 2010, Allen and Moore filed a complaint against Clarian on behalf of themselves and a putative class of uninsured recipients of Clarian's services since May 5, 2000. Allen and Moore alleged that Clarian breached the terms of its contracts with them. Specifically, Allen and Moore alleged:

49. The contracts did not describe the services that would be performed by Clarian, its employees, or agents.

50. The contracts did not establish a price for the services and supplies that would be provided by Clarian, its employees, or agents.

51. Because no price was specified in the contracts, Clarian was required to act in good faith and charge a reasonable price for the medical services and supplies it provided to Allen, Moore[,] and the Class members.

52. The chargemaster charges imposed and collected by Clarian for the medical services and supplies provided to Allen and the Class members are unreasonable and constitute a breach of the contracts between Clarian and its uninsured patients.

53. Allen, Moore, and the Class members have either fully or partially performed under the contract by paying or making payments to Clarian, or have been excused from performance by Clarian's first material breach of the contract.

54. As a result of Clarian's breach of the contract, Plaintiffs . . . have been damaged. . . .

*Id.* at 13.[2] Allen and Moore then requested judgment "declaring the chargemaster

---

1. A hospital's chargemaster is a comprehensive schedule of the hospital's prices for its services used to calculate billing and reimbursement for those services.

2. Allen and Moore also alleged that their con-

rates billed by Clarian to its uninsured patients unreasonable and unenforceable." *Id.* at 15.

On June 29, 2010, Clarian filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Indiana Trial Rule 12(B)(6). The trial court held a hearing on Clarian's motion in September of 2010, after which it granted the motion, entered final judgment in favor of Clarian, and dismissed the complaint with prejudice.[3] This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

■ Allen and Moore appeal the trial court's dismissal of their complaint. We review *de novo* a trial court's grant or denial of a motion based on Indiana Trial Rule 12(B)(6). *Babes Showclub v. Lair,* 918 N.E.2d 308, 310 (Ind.2009). Such a motion tests the legal sufficiency of a claim, not the facts supporting it. *Charter One Mortgage Corp. v. Condra,* 865 N.E.2d 602, 604 (Ind.2007). Viewing the complaint in the light most favorable to the non-moving party, we must determine whether the complaint states any facts on which the trial court could have granted relief. *Id.* at 604–05.

■ To establish a claim for a breach of contract, Allen and Moore had to allege (1) the existence of a contract, (2) the defendant's breach thereof, and (3) damages. *See Rogier v. Am. Testing & Eng'g Corp.,* 734 N.E.2d 606, 614 (Ind.Ct.App.2000), *trans. denied.* The existence of the contracts with Clarian is not disputed, but the parties do dispute whether there were breaches or damages. Clarian also contends that the contracts unambiguously require payment, that Allen and Moore are, in effect, seeking judicial review of the adequacy of contract consideration, and that to permit Allen and Moore's cause of action would violate "public policy." Appellee's Br. at 6. We address these issues in turn.

### Issue One: Allegation of Breach

■ The first issue we consider is whether Allen and Moore's complaint alleges a breach of their contracts by Clarian. Allen and Moore contend that "no price was specified in the contracts" and, therefore, that they only agreed to pay a reasonable charge for Clarian's services. *See* Appellant's App. at 13. Clarian, on the other hand, contends that "the express account-payment term, together with the definiteness provided by its chargemaster rates, is an unambiguous, express obligation binding on" Allen and Moore. Appellee's Br. at 5. Clarian also asserts that "there is no other way to establish a payment obligation for health care services on an *ex ante* basis since the course of treatment is unknowable in advance."[4] *Id.* We cannot agree with Clarian. There is no

tracts with Clarian were contracts of adhesion and have repeated that contention on appeal. Given our holding, however, we need not address that issue.

3. The trial court did not simply grant Clarian's motion to dismiss but entered final judgment for Clarian. Under Indiana Trial Rule 12(B):

> When a motion to dismiss is sustained for failure to state a claim under subdivision (B)(6) of this rule the pleading may be amended once as of right pursuant to Rule 15(A) within ten days after service of the notice of the court's order ... and thereafter with permission of the court....

However, Allen and Moore did not submit an amended complaint.

4. Allen and Moore do not contend that the ultimate charge could have been or should have been stated in advance. They dispute the amount of the charge, not that a charge is due for the services rendered.

reference to the chargemaster rates, express or implied, in the contracts. Accordingly, the law implies a reasonable charge.

In 1888, our supreme court considered a case where one party rendered services to another pursuant to a contract that lacked a specific statement of compensation. The court held:

> The case is the simple and ordinary one of a plaintiff rendering service at the instance of a defendant without any specific compensation being agreed upon. As every one knows, the law implies a promise on the part of the defendant in such cases to pay the plaintiff the reasonable value of his services.

*Louisville, New Albany & Chicago Ry. Co. v. Hubbard,* 116 Ind. 193, 18 N.E. 611, 612 (1888); *see also Champa v. Consol. Fin. Corp.,* 231 Ind. 580, 110 N.E.2d 289, 296 (1953) ("The conditional buyer ... took the car to appellant's garage and requested the repairs, but no contract was made for any definite price. In such cases the law implies a promise to pay the reasonable value of services."); *Lennox & Matthews & Assocs. v. Rozzelle,* 231 Ind. 343, 108 N.E.2d 621, 622 (1952) ("Under such circumstances the law will imply a promise to pay the reasonable value [of the services rendered]."); *Ind. Bell Telephone Co. v. Ice Serv., Inc.,* 142 Ind.App. 23, 29, 231 N.E.2d 820, 824 (1967) ("Where there is an agreement that compensation is to be paid but the price is not fixed, the party furnishing services and materials in performance of the contract is entitled to the reasonable value thereof."); *Coleman v. Chapman,* 139 Ind.App. 385, 391, 220 N.E.2d 285, 289 (1966) (same).

■ As those cases demonstrate, Indiana common law has long held that a reasonable charge will be implied in a contract that does not otherwise specify a charge. Our common law is in line with well-established jurisprudence: "Where a contract makes no statement as to the price to be paid, the law invokes the standard of reasonableness, and the fair value of the services or property is recoverable." 17A Am.Jur.2d Contracts § 488 (2d ed.2011).

> Accordingly, where a person performs services ... for another at the other's request and there is no express agreement as to compensation, a promise to pay the reasonable value of the services ... may properly be implied where the circumstances warrant. Even though a contract is too indefinite as to price or compensation for enforcement, recovery may generally be had for the reasonable value of goods or services furnished in pursuance of it.

*Id.* (footnotes omitted).

■ The Indiana Supreme Court recently invoked this rule when it declared that:

> *the proper measure of medical expenses in Indiana is the reasonable value of such expenses.* This measure of damages cannot be read as permitting only full recovery of medical expenses billed to a plaintiff. Nor can the proper measure of medical expenses be read as permitting only the recovery of the amount actually paid. The focus is on the reasonable value, not the actual charge. This is especially true given the current state of health care pricing.

> The complexities of health care pricing structures make it difficult to determine whether the amount paid, the amount billed, or an amount in between represents the reasonable value of medical services. One authority reports that hospitals historically billed insured and uninsured patients similarly. Mark A. Hall & Carl E. Schneider, Patients As Consumers: Courts, Contracts, and the New Medical Marketplace, 106 Mich. L.Rev. 643, 663 (2008). With the advent

of managed care, some insurers began demanding deep discounts, and hospitals shifted costs to less influential patients. *Id.* This authority reports that insurers generally pay about forty cents per dollar of billed charges and that hospitals accept such amounts in full satisfaction of the billed charges. *Id.*

As more medical providers are paid under fixed payment arrangements, another authority reports, hospital charge structures have become less correlated to hospital operations and actual payments. The Lewin Group, A Study of Hospital Charge Setting Practices i (2005). Currently, the relationship between charges and costs is "tenuous at best." *Id.* at 7. In fact, *hospital executives reportedly admit that most charges have "no relation to anything, and certainly not to cost."* Hall, Patients As Consumers at 665. [Internal Footnote 3: *Indeed, amicus in this case, the Insurance Institute of Indiana, Inc., flatly says "charges billed by health care providers are effectively irrelevant to the value of the services provided...."* ] Thus, based on the realities of health care finance, we are unconvinced that the reasonable value of medical services is necessarily represented by either the amount actually paid or the amount stated in the original medical bill.

When dealing with a similar issue, our sister court in Ohio declared that, "[t]he jury may decide that the reasonable value of medical care is the amount originally billed, the amount the medical provider accepted as payment, or some amount in between ... both the original bill and the amount accepted are evidence relevant to the reasonable value of medical expenses." We adopt this approach.

*Stanley v. Walker,* 906 N.E.2d 852, 856–57 (Ind.2009) (emphases added; some citations and footnotes omitted; other omissions and some alterations original). Although *Stanley* was a personal injury case, not an action for breach of contract, our supreme court squarely addressed and resolved the primary issue before us in this case when it held that the proper measure of medical expenses in Indiana is the reasonable value of those expenses and that, absent an express agreement, various factors may be taken into account in determining the reasonable value of medical expenses.

This court recently reiterated these same principles. Specifically, this court considered a collection lawsuit filed by a medical doctor against a former patient for an unpaid bill. In that case, the patient had signed "financial responsibility forms ... when the services were rendered[ ] that guaranteed payment for charges incurred on her account." *Jackson v. Trancik,* 953 N.E.2d 1087, 1090 (Ind.App.2011), *not yet certified.* The doctor filed suit for the balance of the account, net of insurance, and the patient-defendant challenged the reasonableness of the doctor's fees. The trial court struck the patient's evidence offered to prove the reasonableness of the doctor's fees and entered summary judgment for the doctor.

On appeal, we reversed the trial court's judgment, noting that the issue between the parties was whether the doctor's charges reflected "the amounts usually, customarily, and reasonably billed for such services." *Id.* at 1091 (citing *Galloway v. Methodist Hosp., Inc.,* 658 N.E.2d 611, 613–14 (Ind.Ct.App.1995)). Thus, we conclude that it is immaterial whether the action is in contract or in tort, and that, where no price has been specified for the services to be rendered, "the proper measure of medical expenses in Indiana is the reasonable value of such expenses." *Stanley,* 906 N.E.2d at 856. And the reason-

able value is not necessarily represented by either the amount actually paid or the amount stated in the original medical bill. *Id.*

Indiana law notwithstanding, Clarian contends that the weight of foreign law shows, in effect, that hospitals are not held to the same reasonableness standard in the interpretation of their contracts for medical services. Clarian first cites a 2007 decision of the Supreme Court of South Dakota. In that case, the court considered whether the plaintiffs stated a claim when they alleged that certain hospitals unreasonably charged them the "full, undiscounted cost rather than the discounted rates Hospitals charged insured and Medicare/Medicaid patients." *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 190 (S.D.2007) (quotation omitted). The South Dakota Supreme Court held:

> we conclude that this theory fails to state a claim because *the price terms were controlled by language in the contracts.* The complaints all allege that the Hospitals required the Patients to sign contracts agreeing "to pay, in full, unspecified and undiscounted charges for medical care, which charges [were] *pre-set* by [the Hospitals]...." (Emphasis added.) Because, as we explain below, pre-set price charges were pleaded, the price terms were fixed and determinable, and because *the contracts spoke to the issue of price,* the law does not permit imputation of different, implied price terms for what patients later claimed were the reasonable values of the services provided

*Id.* at 191 (some emphases added; alterations, and omission original). As the court further noted, "prices that are previously fixed at a given amount are determinable. Therefore ... the contracts were not silent or open concerning price and we can-

not impute commercially reasonable ... terms into the agreements." *Id.* at 191–92.

Clarian also relies heavily on *DiCarlo v. St. Mary Hospital,* 530 F.3d 255 (3d Cir. 2008). In *DiCarlo,* the United States Court of Appeals for the Third Circuit adopted the opinion of the United States District Court for the District of New Jersey and held that the plaintiffs lacked a cause of action against the hospital. Under the plaintiff's contract with the hospital, the plaintiff "guarantee[d] payment of *all charges* and collection costs for services rendered...." *DiCarlo,* 530 F.3d at 259 (emphasis original). Thereafter, the hospital charged the plaintiff "significantly higher rates than [it would have charged] insured patients and patients covered under [government programs]." *Id.* The plaintiff sued the hospital for breach of contract, among other causes, for not charging a reasonable fee.

The court dismissed the action on the pleadings, reasoning as follows:

> While Plaintiff's contentions have facial persuasiveness, they fail to take into account the peculiar circumstances of hospitals ... and the bearing these circumstances have upon the interpretation of contracts between a patient and the hospital....
>
> ... The Court finds that in the context of this case, the price term was not in fact open, and *that "all charges" unambiguously can only refer to St. Mary's uniform charges set forth in its Chargemaster....*
>
> The price term "all charges" is certainly less precise than price term of the ordinary contract for goods or services in that it does not specify an exact amount to be paid. It is, however, the only practical way in which the obligations of the patient to pay can be set forth, given the fact that nobody yet

knows just what condition the patient has, and what treatments will be necessary to remedy what ails him or her. Besides handing the patient an inches-high stack of papers detailing the hospital's charges for each and every conceivable service, which he or she could not possibly read and understand before agreeing to treatment, the form contract employed by St. Mary's is the only way to communicate to a patient the nature of his or her financial obligations to the hospital. Furthermore, "it is incongruous to assert that [a hospital] breached the contract by fully performing its obligation to provide medical treatment to the plaintiff[ ] and then sending [him] [an] invoice[ ] for charges not covered by insurance." *Burton v. William Beaumont Hosp.*, 373 F.Supp.2d 707, 719 (E.D.Mich.2005).

This case, and other similar cases being brought throughout the country, arise out of the anomalies which exist in the American system of providing health care. A court could not possibly determine what a "reasonable charge" for hospital services would be without wading into the entire structure of providing hospital care and the means of dealing with hospital solvency. These are subjects with which state and federal executives, legislatures, and regulatory agencies are wrestling and which are governed by numerous legislative acts and regulatory bodies. For a court to presume to address these problems would be rushing in where angels fear to tread. What Plaintiff is asking the Court to do here is, put simply, to solve the problems of the American health care system, problems that the political branches of both the federal and state governments and the efforts of the private sector have, thus far, been unable to resolve. Like other similar suits filed in other federal courts, this action seeks judicial intervention in a political morass.

*Id.* at 263–64 (emphasis added; some alterations original; footnotes omitted); *see also Holland v. Trinity Health Care Corp.*, 287 Mich.App. 524, 791 N.W.2d 724, 730 (2010) (holding that the contract phrase "usual and customary charges" unambiguously refers to the chargemaster rates); *Morrell v. Wellstar Health System, Inc.*, 280 Ga.App. 1, 633 S.E.2d 68, 72 (2006) ("The rules of contract construction enabled [the conclusion] that [the term] 'all charges' unambiguously referred to the written summary of specific charges required by [a statute.]"); *Shelton v. Duke Univ. Health System, Inc.*, 179 N.C.App. 120, 633 S.E.2d 113, 116–117 (2006) (concluding that "regular rates and terms of the Hospital" is not an open price term when the prices are set forth in a chargemaster list).

Clarian's reliance on foreign case law is misplaced. Unlike the contracts at issue in those cases, here the only language in the contracts on pricing states that, "[i]n consideration of services delivered . . . , the undersigned guarantees payment of the account, and agrees to pay the same upon discharge if such account is not paid by a private or governmental insurance carrier." Appellants' App. at 17. There is no mention in Clarian's contracts of "regular rates," "pre-set" rates, "all charges," "usual and customary charges," or any other statement that might have placed Allen and Moore on notice of Clarian's fee schedule at the time they entered into the contracts.[5] Accordingly, we are not persuad-

---

5. As we have already noted, Clarian contends that the chargemaster rates are "unambiguous" and "express[,] binding obligation[s]" on Allen and Moore. Appellee's Br. at 5. But at oral argument counsel for Clarian stated that Clarian considers its chargemaster rates con-

ed that the contract terms discussed in any of the foreign case law cited by Clarian apply here.

 Clarian imputes the chargemaster rates into its contracts with Allen and Moore and, in so doing, relies on the holding in *DiCarlo.* We decline Clarian's invitation to follow *DiCarlo* because the court's reasoning in that case is contrary to Indiana law. Specifically, we decline to make the same leap the *DiCarlo* court made when it declared that the price term was not an indefinite, open term and that the generic term "all charges" was unambiguous and could "only refer to" the hospital's chargemaster rates. When interpreting a written contract, the court's primary objective is to discern the intent of the parties from the text of the instrument. *See Johnson v. Johnson,* 920 N.E.2d 253, 256 (Ind.2010). But there must be a basis in the text for our interpretation. We may not simply surmise the intent of the parties, suppose that something is true, and fill in the blank. It is a basic rule of Indiana contract law that a court may not supply missing, essential terms that are not otherwise implied. *See Van Prooyen Builders, Inc. v. Lambert,* 907 N.E.2d 1032, 1037 (Ind.Ct. App.2009), *aff'd on reh'g,* 911 N.E.2d 619, *trans. denied.* Here, the contracts provided by Clarian make no direct or indirect reference to the chargemaster or any other fee schedule, and the price for services to be rendered is, therefore, a missing and essential term.

We find that the decision of the Supreme Court of Tennessee in *Doe v. HCA Health Services of Tennessee, Inc.,* 46 S.W.3d 191 (Tenn.2001), is both directly on point and consistent with current and long-

standing Indiana law. In that case, the court stated, in relevant part, as follows:

> In reviewing the hospital's form contract signed by Jane Doe, we note that the contract contains no express reference to a "document, transaction or other extrinsic facts" nor does it set out "a practicable method" by which Jane Doe's "charges" are to be determined. The contract merely states (in pertinent part): "I understand I am financially responsible to the hospital for *charges* not covered by this authorization." (Emphasis added.) HCA Donelson Hospital asserts, however, that its Charge Master is a sufficient means by which to determine Jane Doe's hospital charges, and that the Charge Master thereby supplies a definite price term in the contract.
>
> We disagree. While it is true that the Charge Master *could* be used as a reference in determining a patient's charges, the flaw in the hospital's argument is that the contract itself does not "*contain* [ ] a reference to some document, transaction or other extrinsic facts [e.g., the Charge Master] from which its meaning may be made clear.*" See* Williston on Contracts, § 4:27, at 593 (emphasis added). *Because the agreement does not refer to a document or extrinsic facts by which the price will be determined, we hold that the price term in the agreement between Jane Doe and* HCA Donelson Hospital is indefinite.
>
> In so holding, we are cognizant of the arguments of the hospital and the amici curiae that invalidating the contract in dispute will wreak havoc on both the hospital industry and on non-health-care businesses alike. They argue that hospitals and other businesses commonly

---

fidential and proprietary. Left unanswered by Clarian is how a patient and a provider can mutually agree to an "unambiguous" and

"express" chargemaster fee schedule that is not available to the patient.

use contracts containing language similar to the hospital's use of "charges" in stating the price to be paid by the purchaser. They contend that holding this hospital contract to be indefinite could cause instability in Tennessee's economy because such a holding jeopardizes any contract that does not state a specific price. To be clear, the Court's holding in this case does not invalidate all contracts that do not state a specific price; to the contrary, our holding is based upon the particular facts of this case, i.e., that HCA Donelson Hospital's contract signed by Jane Doe did not provide any reference to a document, transaction or other extrinsic facts by which the price could be determined and the meaning of the term "charge" made clear. Had the agreement adequately defined "charges," the price term of the contract would not have been indefinite.

*Id.* at 197 (some emphases and alterations original); *see also Payne v. Humana Hospital Orange Park,* 661 So.2d 1239 (Fla. Dist.Ct.App.1995) (holding that "[a] patient may not be bound by unreasonable charges in an agreement to pay charges in accordance with 'standard and current rates.'") (per curiam), *review denied,* 671 So.2d 788 (Fla.1996) (table). We agree with the Tennessee Supreme Court's opinion, which exemplifies Indiana law on a comparable set of facts.

In sum, the contracts between Clarian and Allen and Moore did not specify a price or otherwise identify a fee schedule for the medical services to be rendered. Hence, it is well settled under Indiana law that a reasonable fee is implied. Consistent with that law, Allen and Moore alleged in their complaint that Clarian charged them an unreasonable price. That allegation, if true, would constitute a breach of contract. As such, on the face of the complaint Allen and Moore have suffi-ciently alleged that Clarian breached their contracts.

### Issue Two: Whether the Contracts Are Ambiguous

In a closely related argument, Clarian asserts that the alleged breach stated in the complaint is contrary to Indiana law because "Indiana law implies no duty of reasonableness or good faith in a party's contract performance." Appellee's Br. at 12. Clarian relies on *First Federal Savings Bank of Indiana v. Key Markets, Inc.,* 559 N.E.2d 600, 601 (Ind.1990), in which our supreme court considered a lease agreement that stated, "Tenant shall not assign this lease or sublet all or a portion of the demised premises without the consent of the Landlord." After signing that agreement, the tenant eventually sought the landlord's consent for an assignment of part of the tenancy, but the landlord withheld its consent.

Our supreme court held that the contract did not oblige the landlord to deal with its tenant in good faith:

courts are bound to recognize and enforce contracts where the terms and the intentions of the parties can be readily determined from the language in the instrument. It is not the province of courts to require a party acting pursuant to such a contract to be "reasonable," "fair," or show "good faith" cooperation. Such an assessment would go beyond the bounds of judicial duty and responsibility. It would be impossible for parties to rely on the written expressions of their duties and responsibilities. Further, it would place the court at the negotiation table with the parties. In the instant case, the court would decide what is "fair" or "reasonable" concerning the advantage or disadvantage of control of the leased property. The proper posture for the court is to find and enforce the contract as it is written

and leave the parties where it finds them. *It is only where the intentions of the parties cannot be readily ascertained because of ambiguity or inconsistency in the terms of a contract or in relation to extrinsic evidence that a court may have to presume the parties were acting reasonably and in good faith in entering into the contract.* *Id.* at 604 (emphasis added).

There is a material difference between the contract before the court in *First Federal* and the contracts in this appeal. In *First Federal,* the court applied the general rule that courts will enforce the plain language of an unambiguous agreement, and the court determined that the contract in question was unambiguous. Thus, the controlling factor was the court's determination that the contract before it was unambiguous. But our supreme court also noted an exception to the general rule. *See id.* When a contract is ambiguous, a court "may have to presume the parties were acting reasonably and in good faith." *Id.*

■ Here, the pricing provisions in the contracts are indefinite and, therefore, ambiguous. While no price or fee schedule is stated, according to Clarian's interpretation the contracts provide unconditional promises by patients to pay *any* amount for services provided. We decline to hold that Allen and Moore agreed to pay whatever amount Clarian charged. That would be an unreasonable, if not absurd, interpretation, and we will not interpret a contract in a manner that results in a manifest absurdity. *French–Tex Cleaners, Inc. v. Cafaro Co.,* 893 N.E.2d 1156, 1161 (Ind.Ct. App.2008). Further, the contracts state that the patient "guarantees payment of the account, and agrees to pay the same upon discharge if such account is not paid by a private or governmental insurance carrier." Appellants' App. at 17. That

language is also ambiguous: does it mean that the patient will pay "the same" account "not paid by a private or governmental insurance carrier," that is, the discounted rate that a private or governmental insurance carrier would have been charged? Or does it mean that the patient will pay the full, undiscounted rate, as Clarian has billed Allen and Moore?

■ In this case, the precise meaning of the contracts is not an issue we need to resolve given our holding that Allen and Moore are required to pay only a reasonable fee for Clarian's medical services. As explained by our supreme court in *Stanley,* that determination will require the factfinder to consider not only the amount billed but also a lesser amount the medical provider would accept as payment, or some amount in between. *See* 906 N.E.2d at 856–57. Here, the disputed contract terms are ambiguous, and, thus, *First Federal* does not apply because there is no plain language for this court to enforce in the first instance.

### Issue Three: Adequacy of Contract Consideration

■ Clarian next contends that Allen and Moore's complaint does not allege breach of the contracts but, rather, is "a request for judicial review of the adequacy of the consideration" underlying the contracts. Appellee's Br. at 9. "It is not proper ... for courts to inquire into the adequacy of consideration." *Tanton v. Grochow,* 707 N.E.2d 1010, 1013 (Ind.Ct. App.1999). As this court has noted:

The doing of an act by one at the request of another which may be a detrimental inconvenience, however slight, to the party doing it or may be a benefit, however slight, to the party at whose request it is performed, is legal consideration for a promise by such requesting party. Where the thing agreed upon as

the consideration has no determined value, the judgment of the parties as to its sufficiency will not be disturbed by the court.

*Harrison–Floyd Farm Bureau Co-op. Ass'n v. Reed,* 546 N.E.2d 855, 857 (Ind.Ct. App.1989) (citations omitted).

Clarian conflates the absence of a fee agreement with adequacy of consideration and, in so doing, misconstrues the complaint. Allen and Moore do not assert that a specific, agreed-upon fee or fee schedule is unreasonable, they do not suggest that medical services lack a "determined value," *see id.,* and they do not dispute that they owe Clarian a reasonable fee. They dispute only whether Clarian charged them a reasonable fee. Had the chargemaster rates been specifically agreed upon or otherwise identified in the contracts, Clarian's argument might be well-taken. But the chargemaster rates were not specifically agreed upon or otherwise identified. Indeed, no fee schedule was referenced in the contracts. Thus, we conclude that the complaint is not a request for judicial review of the adequacy of contract consideration.

### Issue Four: Allegation of Damages

Clarian also disputes whether the complaint sufficiently alleges that Clarian's purported breach of the contracts caused damages to Allen and Moore. But it follows from Allen and Moore's complaint that the difference between the payment sought by Clarian and a reasonable charge would be the measure of their damages. Allen and Moore also allege that they have been further damaged by "harassing collection efforts by Clarian's agents and/or employees" and because they "have had their credit standing diminished" following Clarian's submission of unpaid bills to collection agencies.[6] Appellants' App. at 14.

Clarian argues that Allen and Moore have failed to adequately allege damages because they do not assert that they actually paid an amount in excess of a putatively reasonable amount.[7] Stated another way, Clarian argues that Allen and Moore's only recourse is to pay an amount they each deem reasonable and wait for Clarian to sue them for the balance. Then and only then could Allen and Moore assert an affirmative defense against Clarian. Clarian also suggests that this prof-

6. In a footnote, Clarian dismisses these last two allegations of damages by stating that they do not demonstrate "concrete facts showing lost purchase or investment opportunities or other monitizable harm stemming from an assertedly diminished credit rating." Appellee's Br. at 20–21 n. 35 (citing federal circuit cases). Clarian does not cite any Indiana law demonstrating such a burden at the pleading stage of the proceedings. That said, Allen and Moore's only citation in support of permitting these damages under Indiana law is a statement made in passing by this court in 1977 that "[d]amage to [one's] credit rating would more properly be an element of compensatory damages rather than punitive damages." *Hall v. Owen Cnty. State Bank,* 175 Ind.App. 150, 172, 370 N.E.2d 918, 933 (1977). The parties otherwise do not develop whether these additional damage allegations should defeat Clarian's Rule 12(B)(6) motion. *Cf. Fowler v. Campbell,* 612

N.E.2d 596, 601–02 (Ind.Ct.App.1993) ("In order to recover on a breach of contract claim, the alleged breach must be a cause in fact of the plaintiff's loss. . . . The test of causation in common law contract actions is . . . whether the breach was a substantial factor in bring about the harm."). We need not resolve this issue because we hold that Indiana's Declaratory Judgment Act provides Allen and Moore with a clear remedy on their breach of contract claim.

7. Clarian likewise asserts that Allen and Moore only "make a conclusory effort to allege damage, [which] is a mere legal conclusion to which the Court owes no deference." Appellee's Br. at 18. It is not clear from the face of the complaint how Clarian reached its conclusion that Allen and Moore do not allege a factual basis for their claims.

fered procedure is an "adequate remedy at law" for purposes of the Indiana Declaratory Judgments Act ("the Act"), and, therefore, that Allen and Moore cannot use the Act to circumvent their unripe damages allegation. *See* Appellee's Br. at 20.

■ Allen and Moore have styled their complaint as a declaratory judgment, in which they are seeking to have their contracts with Clarian construed to supply a missing term, namely, the provision for payment. Thus, Allen and Moore seek to have Clarian's charges declared "unreasonable and unenforceable." Appellants' App. at 15. In place of Clarian's chargemaster rates, Allen and Moore seek, in light of established Indiana law, a declaration that they are only obligated to pay reasonable charges.

■ The purpose of the Act is "to furnish an adequate and complete remedy where none before had existed." *Madden v. Houck,* 403 N.E.2d 1133, 1135 (Ind.Ct. App.1980). "It was not intended to eliminate well-known causes of action, where the issues are ripe for litigation through the usual processes." *Id.* "The determinative factor is whether the declaratory action will result in a just and more expeditious and economical determination of the entire controversy." *Id.* (quotation omitted).

Under the Act, a party to a contract may have determined "any question of construction or validity arising under the ... contract ... and obtain a declaration of rights ... or other legal relations thereunder." Ind.Code § 34–14–1–2. Further, "[a] contract may be construed either before or after there has been a breach of the contract." I.C. § 34–14–1–3. And "[w]hen a proceeding under this [Act] involves the determination of an issue of fact, the issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." I.C. § 34–14–1–9.

Even accepting as true Clarian's allegation that the question of damages is not ripe because Allen and Moore have yet to pay any fees, Allen and Moore may invoke the Act to construe the contracts to determine their legal right to pay only a reasonable fee and whether Clarian charged them a reasonable fee. *See* I.C. § 34–14–1–9 ("When a proceeding under this chapter involves the determination of an issue of fact, the issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions...."). Further, Allen and Moore are not required to pay a partial fee and then to wait for Clarian to sue them on the balance, as Clarian asserts they must do, as that would undermine the Act's purpose to provide a "more expeditious and economical determination of the entire controversy." *See Madden,* 403 N.E.2d at 1135.

Clarian also contends that use of the Act is inappropriate here because Allen and Moore "seek a declaration that they are not liable to pay Clarian's bills." Appellee's Br. at 20. In support, Clarian cites *Union Federal Savings Bank v. Chantilly Farms, Inc.,* 556 N.E.2d 9 (Ind.Ct.App. 1990). In that case, four banks filed a declaratory judgment action to determine their "liability, if any" under the Uniform Commercial Code and the Uniform Fiduciaries Act for claims of conversion made by a depositor in a separate, later-filed action. *Id.* at 11. We affirmed the trial court's dismissal of the declaratory judgment action, reasoning as follows:

> Nowhere in [former Indiana Code Section 34–4–10–2, now Section 34–14–1–2] or in any of the case law cited by the Banks has the phrase "rights, status or other legal relations" been interpreted

to include a determination of a party's liability.

In their complaint, the Banks requested the trial court to determine their "liability, if any," under the applicable statutes. They did not request the court to construe a statute or determine a statute's validity. The determination of liability is not a proper ground upon which to seek declaratory relief. Accordingly, the Banks presented no set of facts under which they would be entitled to declaratory relief thereby making the dismissal of their complaint proper.

To afford [I.C. § ] 34–4–10–2 the interpretation espoused by the Banks would pervert the purpose of the Declaratory Judgments Act. The statute is remedial in nature and is intended to provide a remedy where none existed before. "The existence of another adequate remedy, however, does not preclude a judgment for declaratory relief in cases where it is appropriate." The present case does not present facts which make declaratory relief appropriate because all the Banks seek is a determination of their liability. The Banks can defend the claims against them in Chantilly's conversion action in which liability will be determined.

The Banks contend that they should be allowed to maintain their declaratory judgment action because they are entitled to remain plaintiffs in this controversy and Chantilly should be made to file a counterclaim. We find this assertion without merit. The Declaratory Judgments Act was not intended to reward the winner of a race to the courthouse. Rather, declaratory judgment actions should be allowed only if they "result in a just and more expeditious and economical determination of the entire controversy." The most expeditious way to resolve this controversy is to allow Chantilly to pursue its conversion claim which will allow the trial court to determine whether the Banks incurred any liability.

*Id.* at 11–12 (citations omitted).

■■■ Clarian's reliance on *Union Federal* misses the point. Here, Allen and Moore are not merely seeking a declaration of their liabilities, as the banks in *Union Federal* were doing. Allen and Moore are seeking a declaration of their rights, obligations, and corresponding liabilities under their contracts with Clarian. That is, Allen and Moore seek to have the obligation to pay provisions in their contracts construed by the court. And it is well established that "declaratory judgment is appropriate to construe a contract even in the absence of a breach." *Hartford Accident & Indem. Co. v. Dana Corp.,* 690 N.E.2d 285, 294 (Ind.Ct.App.1997) (citing former Indiana Code Section 34–4–10–3, now Section 34–14–1–3), *trans. denied.* Hence, we conclude that Allen and Moore have sufficiently stated a claim for damages for purposes of this action.

### Issue Five: Public Policy

■■■ Finally, apart from addressing the merits of the Rule 12(B)(6) motion, Clarian contends that this court should affirm the trial court's judgment in order to "decline plaintiffs' invitation to upset the judgment of the political branches." Appellee's Br. at 21. Specifically, Clarian argues that "the Court should defer to the political branches of government respecting policy considerations associated with uninsured patients," *id.,* and that *DiCarlo* and the other case law cited by Clarian "counsel judicial deference to the political branches in the context of uninsured patients' disparate pricing claims against hospitals even in States where the legislature has not directly addressed the issue," *id.* at 24.

Clarian's fourteen-page discussion is repetitious of its prior arguments and follows the rationale advanced in *DiCarlo*, namely, that due to "the peculiar circumstances of hospitals" and "the anomalies which exist in the American system of providing health care," a court "could not possibly determine what a 'reasonable charge' for hospital services would be" and the courts should, therefore, defer to state and federal executives, legislatures, and regulatory agencies. 530 F.3d at 263–64. In essence, Clarian contends, as a matter of public policy, that health care billing is so complicated that Indiana courts are not capable of determining reasonable medical expenses and that hospitals should be immune from medical billing claims unless our legislature expressly authorizes such claims.

 Clarian's suggestion that the Indiana judiciary is not an appropriate forum for adjudicating reasonable medical expenses was squarely rejected by our supreme court's decision in *Stanley*. Again, the court expressly concluded, albeit in the context of personal injury law, that Indiana's courts and jurors are quite capable of determining reasonable medical expenses. *Stanley*, 906 N.E.2d at 856–57. And it has long been the judiciary's function to determine a reasonable charge when a contract lacks a definite provision for payment. *See, e.g., Hubbard*, 18 N.E. at 612. We recognize that medical billing is complicated, *see Stanley*, 906 N.E.2d at 857, but that does not change the fact that this is a basic breach of contract case guided by well-established Indiana law. We have found no Indiana authority supporting the proposition that medical expenses and billing are or should be exempt from the common law.

### Conclusion

In sum, the trial court erred when it granted Clarian's Rule 12(B)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Allen and Moore stated a claim for breach of contract under the Indiana Declaratory Judgments Act. More than a century of legal precedent, including recent Indiana Supreme Court authority, provides the proper legal framework for our conclusion that Allen and Moore have stated a claim for breach of contract upon which relief can be granted. The trial court's decision is reversed and this cause is remanded for further proceedings.

Reversed and remanded.

ROBB, C.J., and BAILEY, J., concur.