ATTORNEYS FOR APPELLANTS
Jerry Garau
Garau Germane Hanley & Pennington, PC
Indianapolis, Indiana

`

Robert E. Burkett
Burkett Law Office
Indianapolis, Indiana

Scott Andrew Weathers
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
David J. Mallon
Phillip A. Whistler
Brian J. Paul
Edward P. Steegmann
Ice Miller LLP
Indianapolis, Indiana

Jon Laramore
Baker & Daniels LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA HOSPITAL ASSOCIATION
Angela M. Smith
Hall Render Killian Heath & Lyman, PSC
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 49S02-1203-CT-140

ABBY ALLEN AND WALTER MOORE,

*Appellants (Plaintiffs below),*

v.

CLARIAN HEALTH PARTNERS, INC.

*Appellee (Defendant below).*

Appeal from the Marion Superior Court, No. 49D01-1005-CT-020423
The Honorable David Shaheed, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-1011-CT-1174

**December 19, 2012**

**Rucker, Justice.**

Uninsured patients filed a putative class action complaint against a hospital alleging breach of contract and seeking a declaration that rates the hospital billed were unreasonable and unenforceable. The trial court granted the hospital's motion to dismiss. We affirm the trial court's judgment.

**Facts and Procedural History**

Because this case arises from a motion to dismiss the only facts on which we rely are those alleged in the complaint. Abby Allen and Walter Moore (referred to collectively as "Patients") sought medical treatment at Clarian North Hospital, a hospital owned by Clarian Health Partners, Inc. ("Clarian"). Before receiving treatment Allen, who is uninsured and not covered by Medicare or Medicaid, signed a form contract drafted by Clarian under which she agreed to pay all charges associated with her treatment. The contract did not specify a dollar amount for services rendered, but provided that Allen "guarantees payment of the account." App. at 17. Clarian provided medical treatment to Allen and then billed its "chargemaster"[1] rates for medical services and supplies in the amount of $15,641.64. Patients' two-count putative class action complaint alleges breach of contract and seeks declaratory judgment, namely, that rates the hospital bills its uninsured patients are unreasonable and unenforceable. According to the complaint, if Allen had been insured then Clarian would have accepted $7,308.78 for the same services and supplies. The complaint alleges that Clarian charges only uninsured patients the chargemaster rates, while "[i]nsured patients and Medicare/Medicaid patients pay significantly discounted rates for the same services and supplies." App. at 9.

Clarian moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Indiana Trial Rule 12(B)(6). The trial court granted the motion. Patients appealed and the Court of Appeals reversed the trial court's judgment and remanded this cause for further proceedings. Among other things the Court of Appeals concluded that because the contract did not contain a price term the reasonable value of services should be implied, and the issue of reasonableness requires resolution by a fact-finder. Allen v. Clarian Health Partners,

---

[1] The "chargemaster," also referred to as the "charge description master," is "a listing of the amount charged by a hospital for each service, item and procedure: (A) provided by the hospital; and (B) for which a separate charge exists." Ind. Code § 11-10-3-6(b)(1).

Inc., 955 N.E.2d 804 (2011). We disagree with our colleagues, and having previously granted transfer thereby vacating the opinion of the Court of Appeals, see Ind. Appellate Rule 58(A), we now affirm the judgment of the trial court.

## Standard of Review

A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the facts supporting it. Charter One Mortg. Corp. v. Condra, 865 N.E.2d 602, 604 (Ind. 2007). Thus, the motion tests whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief. Putnam Cnty. Sheriff v. Price, 954 N.E.2d 451, 453 (Ind. 2011). In ruling on a motion to dismiss for failure to state a claim, the trial court is required to view the complaint in the light most favorable to the non-moving party with every inference in its favor. Id. Our review of a trial court's grant or denial of a motion to dismiss based on Trial Rule 12(B)(6) is de novo. Charter One Mortg. Corp., 865 N.E.2d at 604. Viewing the complaint in the light most favorable to the non-moving party, we must determine whether the complaint states any facts on which the trial court could have granted relief. See id. at 604-05.

## Discussion

Patients first assert the chargemaster rates imposed by Clarian are unreasonable and constitute a breach of contract. This breach of contract claim rests on a critical underlying premise, namely, that the contract lacks the material term of price, and because no price term is present a "reasonable price" is imputed to the contract. See App. at 13. Second, Patients seek a declaratory judgment that "the chargemaster rates billed by Clarian to its uninsured patients [are] unreasonable and unenforceable." App. at 15. Because the viability of the breach of contract claim must necessarily be decided in Patients' favor in order for the declaratory judgment claim to come before us, we address Patients' breach of contract claim first.

The provision of the contract at issue provides in relevant part:

> In consideration of services delivered by Clarian North Medical Center and/or the physicians, the undersigned guarantees payment of the account, and agrees to pay the same upon discharge if such account is not paid by a private or governmental insurance carrier. . . . If the amounts due Clarian North Medical Center for services rendered become delinquent and the debt is referred to an attorney for collection, it is understood and agreed that I shall be responsible for reasonable attorneys' fees, court costs, and pre-judgment interest.

App. at 17.[2] Patients complain the contract "failed to specify a price for the medical services provided." App. at 48. Indeed, according to Patients, the contract is "silent" on price. App. at 51. Thus, they argue "[w]here a contract does not specify a price for services under the contract, Indiana law implies a reasonable price." App. at 51. See, e.g., Ind. Bell Tel. Co. v. Ice Serv., Inc., 231 N.E.2d 820, 824 (Ind. Ct. App. 1967) ("Where there is an agreement that compensation is to be paid but the price is not fixed, the party furnishing services and materials in performance of the contract is entitled to the reasonable value thereof."), trans. denied.

Our objective in interpreting a contract is "to ascertain the meaning and intent of the parties as expressed in the language used." Evansville-Vanderburgh Sch. Corp. v. Moll, 344 N.E.2d 831, 837 (Ind. 1976) (quoting Jenkins v. King, 65 N.E.2d 121, 123 (Ind. 1946)). "In determining the intention of the parties, a contract should be considered in the light of the surrounding circumstances existing at the time it was made. The court should consider the nature of the agreement, together with all the facts and circumstances leading up to the execution of the contract, the relation of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract." Coleman v. Chapman, 220 N.E.2d 285, 288 (Ind. Ct. App. 1966).

We agree that *if* a contract is uncertain as to a material term such as price then Indiana courts may impute a reasonable price. See id. at 289 (noting the "law implies a promise . . . to

---

[2] This language is taken from Moore's contract, which is attached to the complaint. Allen states that Clarian is in possession of her contract, and it is "essentially the same as the contract between Clarian and Moore." App. at 7.

pay a reasonable compensation" in the absence of an express agreement). In fact "[t]o be valid and enforceable, a contract must be reasonably definite and certain." Conwell v. Gray Loon Outdoor Mktg. Grp., Inc., 906 N.E.2d 805, 813 (Ind. 2009). See also Restatement (Second) of Contracts § 33 (recognizing that in order to give effect to a contract, its terms must be "reasonably certain"). But "[a]n offer which appears to be indefinite may be given precision by usage of trade or by course of dealing between the parties." Id., cmt. a. Only "reasonable" certainty is necessary; "absolute certainty in all terms is not required." Conwell, 906 N.E.2d at 813.

A contract need not declare a specific a dollar amount for goods or services in order to be enforceable. See id. (finding contract was enforceable at price billed where buyer requested services, seller performed, and no specific price term was agreed upon); Restatement (Second) Contracts § 4, illus. 1 ("A telephones to his grocer, 'Send me a ten-pound bag of flour.' The grocer sends it. A has thereby promised to pay the grocer's current price therefor."). In the context of contracts providing for health care services precision concerning price is close to impossible. As the Third Circuit has recognized, omitting a specific dollar figure is "the only practical way in which the obligations of the patient to pay can be set forth, given the fact that nobody yet knows just what condition the patient has, and what treatments will be necessary to remedy what ails him or her." DiCarlo v. St. Mary Hosp., 530 F.3d 255, 264 (3d Cir. 2008). And a leading scholarly article on the subject—while advocating for courts to "shelter" patients in the health care market—recognizes that "courts have generally tolerated low levels of specificity in medical contracts." Mark A. Hall and Carl E. Schneider, Patients as Consumers: Courts, Contracts, and the New Medical Marketplace, 106 Mich. L. Rev. 643, 646, 674 (2008).

In the context of a contract for the provision of and payment for medical services, a hospital's chargemaster rates serve as the basis for its pricing. Each hospital sets its own chargemaster rates, thus each hospital's chargemaster is unique. See Br. for Ind. Hosp. Ass'n as Amicus Curiae at 3. It is from these chargemaster prices that insurance companies negotiate with hospitals for discounts for their policyholders. Id. at 6. And other reimbursement schemes are based in part on hospital chargemaster rates. See, e.g., I.C. § 11-10-3-6(d)(1) (reimbursing hospitals 65% of their chargemaster rates for medical care provided to Indiana inmates). Even

the 2010 Federal Patient Protection and Affordable Care Act recognized the centrality of chargemasters to hospital billing practices. See Timothy D. Martin, The Impact of Healthcare Reform on Revenue-Cycle Management and Claim Coding, 4 J. Health & Life Sci. L. 159, 175 (2011) (recognizing that the Act requires hospitals to publish their chargemasters annually).

Patients contend their promise to pay "the account" for treatment is indefinite and therefore cannot constitute a price term for the hospital's services. We disagree. Many courts have addressed contracts similar to those of Patients' and most have held that price terms in these contracts, while imprecise, are not sufficiently indefinite to justify imposition of a "reasonable" price standard. For example, the Third Circuit held that a patient's promise to pay "all charges and collection costs for services rendered" was not indefinite, and "can only refer to [the hospital's] uniform charges set forth in its Chargemaster." DiCarlo, 530 F.3d at 264. Other courts have reached similar conclusions. See, e.g., Banner Health v. Med. Sav. Ins. Co., 163 P.3d 1096, 1101 (Ariz. Ct. App. 2007) (finding that patients who agreed to "pay the account" agreed to pay charges billed in accordance with the hospital's chargemaster that was filed with the state health department pursuant to statute); Holland v. Trinity Health Care Corp., 791 N.W.2d 724, 730 (Mich. Ct. App. 2010) (concluding the phrase "usual and customary charges" in hospital's contract with a patient "unambiguously refers to the 'Charge Master'"); Shelton v. Duke Univ. Health Sys., Inc., 633 S.E.2d 113, 114, 116-17 (N.C. Ct. App. 2006) (finding the language "regular rates and terms of the Hospital" not to be an open price term where the prices were set forth in the hospital's chargemaster), review denied; Nygaard v. Sioux Valley Hosp. & Health Sys., 731 N.W.2d 184, 188-89, 191 (S.D. 2007) (interpreting as definite a price term requiring patient to pay "unspecified and undiscounted charges for medical care" which were "pre-set by [the hospital] in its sole discretion"). But see Doe v. HCA Health Svcs. of Tenn., Inc., 46 S.W.3d 191, 197 (Tenn. 2001) (holding that a patient's agreement to be "financially responsible to the hospital for charges not covered by" insurance contained an indefinite price term because although "the Charge Master *could* be used as a reference in determining a patient's charges" the contact at issue did not contain a reference to the chargemaster) (emphasis in original).

Patients rely on Stanley v. Walker, 906 N.E.2d 852 (Ind. 2009) to support their contention this Court has "already determined that courts can and should assess the reasonableness of hospital charges." Appellant's Br. in Opposition to Trans. at 6. But Stanley is inapplicable. In that case the Court was faced with a much different issue than the one presented here. Stanley was a personal injury case in which the plaintiff received medical services following a car accident. The medical expenses were discounted from the chargemaster rate due to an arrangement between the medical provider and plaintiff's health insurer. At trial, the defendant sought to introduce evidence of this discounted amount as relevant to damages. The issue presented was whether Indiana's collateral source statute, which prohibits the introduction of evidence of insurance benefits in personal injury actions, barred admission of the defendant's proffered evidence. Holding that the evidence was admissible "[t]o the extent the discounted amounts may be introduced without referencing insurance" the Court concluded that the collateral source rule did not prohibit the introduction of discounted hospital billing in determining—for evidentiary purposes—the reasonable value of medical expenses in a claim for damages. See Stanley, 906 N.E.2d at 853. We decline to extend Stanley to actions for breach of contract.

We align ourselves with those courts that have recognized the uniqueness of the market for health care services delivered by hospitals, and hold that Patients' agreement to pay "the account" in the context of Clarian's contract to provide medical services is not indefinite and refers to Clarian's chargemaster. As a result, we cannot impute a "reasonable" price term into this contract. See First Fed. Sav. Bank of Ind. v. Key Markets, Inc., 559 N.E.2d 600, 604 (Ind. 1990) (refusing to engraft reasonableness language onto a real estate lease, where the express provision at issue was "well understood in the business community and commonly found in such leases"). Because Patients' complaint stated no facts on which the trial court could have granted relief, it properly granted Clarian's motion to dismiss. Having thus resolved Patients' breach of contract claim, we need not reach Patients' declaratory judgment claim.

**Conclusion**

We affirm the judgment of the trial court.

Dickson, C.J, and David, Massa and Rush, JJ., concur.