

**FILED**

Mar 14 2016, 6:32 am

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEES |
|---|---|
| Dennis F. Dykhuizen | Laura L. Ezzell |
| Theodore T. Storer | Edward J. Chester |
| Reanna L. Kuitse | Chester Law Office |
| Rothberg Logan & Warsco LLP | Elkhart, Indiana |
| Fort Wayne, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Parkview Hospital, | March 14, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 02A03-1507-PL-959 |
| v. | Appeal from the Allen Circuit Court. The Honorable Craig J. Bobay, Special Judge. |
| Thomas E. Frost by Shirley A. Riggs, his Guardian, | Cause No. 02C01-1405-PL-221 |
| *Appellees-Plaintiffs.* | |

**Friedlander, Senior Judge**

[1] In this interlocutory appeal, we are presented with the issue of whether evidence of discounts provided to patients who either have private health insurance or are covered by government healthcare reimbursement programs is relevant, admissible evidence regarding the determination of reasonable charges under the Indiana Hospital Lien Act, Indiana Code Annotated section 32-33-4-

1, *et seq.* (West, Westlaw current with P.L. 1-2016 and P.L. 2-2016 of the 2016 Second Regular Session of the 119th General Assembly). We hold that it is and affirm.

[2] On October 8, 2013, Frost was seriously injured in a collision involving a motorcycle he was operating and a pickup truck. Frost was transported by airbus to Parkview Hospital where he remained on an in-patient basis until November 12, 2013. Parkview did not obtain a signature on any written contract from Frost or his personal representative at the time of Frost's in-patient stay there.

[3] On November 12, 2013, Frost's condition had improved such that he was transferred to the skilled nursing facility at Parkview Randalia. The next day, Frost's mother, Shirley Riggs, who had just recently been appointed as guardian over the person and estate of Frost, was approached by Parkview to sign an admission agreement, which she did sign. The agreement contained the following provision:

> Agreement to Pay
> The patient or person financially responsible for the patient, in consideration of the service to be rendered to the patient, is obligated to pay the account of the Hospital on all charges for services rendered.

Appellant's App. p. 44.

[4] Frost remained in skilled nursing until January 7, 2014, when he was transferred to in-patient rehabilitation before being discharged on January 28, 2014.

[5] Parkview filed its hospital lien with the Allen County Recorder on February 12, 2014, in the amount of $629,386.50. That amount included charges for Frost's in-patient and skilled nursing care at Parkview. A copy of the lien was mailed to the law firm representing Frost in his personal injury action.

[6] Frost hired a person employed by an independent medical bill reviewing company to review the charges. After the discovery of several billing errors, Parkview filed a final amended hospital lien in the amount of $625,117.66.

[7] Frost did not have health insurance at the time he sustained his injuries. As the permissive user of the motorcycle, Frost had medical payment insurance coverage through State Farm for $5,000.00.

[8] On May 29, 2014, Frost filed a declaratory judgment action to enforce the patient's remedy under the Indiana Hospital Lien Act, Indiana Code Annotated section 32-33-4-1, *et seq*. (West, Westlaw current with P.L. 1-2016 and P.L. 2-2016 of the 2016 Second Regular Session of the 119th General Assembly). Under the Act, a patient may contest the lien or the reasonableness of the charges by filing a motion to quash or reduce the claim in the court where the lien was perfected. Ind. Code Ann. § 32-33-4-4(e) (West, Westlaw current with P.L. 1-2016 and P.L. 2-2016 of the 2016 Second Regular Session of the 119th

General Assembly). Indiana Code Annotated section 32-33-4-4(e) provides as follows:

> A person desiring to contest a lien or the reasonableness of the charges claimed by the hospital may do so by filing a motion to quash or reduce the claim in the circuit court in which the lien was perfected, making all other parties of interest respondents.

[9] Frost's petition alleged in part that Parkview's charges were unreasonable because they were greater than the amounts Parkview accepts as payment in full from other patients. Frost served a written discovery request on Parkview requesting information about discounts provided to patients who either had private health insurance or who are covered by government healthcare reimbursement programs. Frost was dissatisfied with Parkview's response and sought an order to compel discovery. Parkview requested and received a stay of discovery. Parkview then filed its motion for partial summary judgment seeking an order that its chargemaster[1] rates were reasonable as a matter of law. After a hearing on Parkview's motion, the trial court entered its order denying the motion, concluding that evidence of discounts provided to patients who either have private health insurance or are covered by government healthcare

---

[1] "A chargemaster is an extensive price list created and maintained by hospitals and other providers. A hospital's chargemaster lists a price for each good and service provided by the hospital (20,000 or more separate items may be included). Hospitals update, that is increase, these list prices frequently." George A. Nation III, Determining the Fair and Reasonable Value of Medical Services: The Affordable Care Act, Government Insurers, Private Insurers and Uninsured Patients, 65 Baylor L. Rev. 425, 427-28 (2013).

reimbursement programs is relevant to the determination of reasonable charges under the Act and are admissible. This interlocutory appeal ensued.

[10] In an Indiana summary judgment proceeding, "the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence." *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994). T.R. 56(C) provides in pertinent part:

> At the time of filing [a] motion [for summary judgment] or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto. The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[11] Summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *Miller v. Monsanto Co.*, 626 N.E.2d 538 (Ind. Ct. App. 1993). When we review the grant or denial of a motion for summary judgment our standard of review is the same as that used by the trial court. *J.C. Spence & Assocs., Inc. v. Geary*, 712 N.E.2d 1099 (Ind. Ct. App. 1999). We must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.* In resolving those inquiries, we consider only the evidence that has been

specifically designated to the trial court. *Id.* The party appealing the trial court's ruling has the burden of persuading this court that the trial court's decision was erroneous. *Id.* A summary judgment determination shall be made from any theory or basis found in the designated materials. *Id.* "We give careful scrutiny to the pleadings and designated materials, construing them in a light most favorable to the non-movant." *Id.* at 1102 (quoting *Diversified Fin. Sys., Inc. v. Miner*, 713 N.E.2d 293, 297 (Ind. Ct. App. 1999)). The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Wank v. Saint Francis College*, 740 N.E.2d 908 (Ind. Ct. App. 2000), *trans. denied*.

[12] Parkview claims that Frost may not challenge the reasonableness of the fee because the contract guaranteeing "to pay the account of the Hospital on all charges for services rendered" referred to its chargemaster rates. *See Allen v. Clarian Health Partners, Inc.*, 980 N.E.2d 306 (Ind. 2012) ("In the context of a contract for the provision of and payment for medical services, a hospital's chargemaster rates serve as the basis for its pricing.").

[13] Frost is not challenging that a debt is due Parkview. Likewise, Frost is not asking a court to impute a reasonable price into the contract where no price is stated, or asking a court to completely disregard Parkview's rates. Instead, he argues that under the Act, he may challenge the reasonableness of the charges claimed, and is entitled to discovery from Parkview in order to do so, relying on language from *Stanley v. Walker*, 906 N.E.2d 852 (Ind. 2009) regarding the evidentiary use of discounted medical expenses paid.

[14] The Act does not define a reasonable charge, which makes sense because that is the disputed issue. There are several cases addressing challenges involving the reasonable value of medical services, but not exactly in the context presented in this appeal.

[15] In *Stanley v. Walker*, 906 N.E.2d 852 (Ind. 2009), an action where liability was admitted and the sole issue for trial was damages, the Supreme Court was presented with the question whether the discounted amount of medical expenses actually paid by the plaintiff in a personal injury case was admissible and relevant to a determination of damages to an injured party. The plaintiff, who was insured, paid a discounted amount in satisfaction of his medical expenses after negotiations conducted by his health insurance provider. *Id.* At trial, without objection, the plaintiff introduced redacted medical bills showing the amounts medical service providers originally billed him. *Id.*

[16] When the defendant sought to introduce evidence of the discounted amount actually paid, the plaintiff objected citing Indiana's collateral source statute, Indiana Code Annotated section 34-44-1-2 (West, Westlaw current with P.L. 1-2016 and P.L. 2-2016 of the 2016 Second Regular Session of the 119th General Assembly), which in pertinent part prohibits the introduction of evidence of insurance benefits in personal injury cases. *Id.* The trial court did not allow admission of the discounted amount finding that it flowed from insurance benefits and as such was barred by the collateral source statute. *Id.*

On appeal, the Supreme Court held that where the reasonableness of the medical expenses is not an issue, medical bills can be introduced under Indiana Evidence Rule 413 as prima facie evidence of the reasonable amount of medical expenses for purposes of a damages determination. *Id.*

On the other hand, when there is a dispute as to the reasonable cost of medical expenses, the opponent may introduce contradictory evidence including expert testimony to challenge the reasonableness of the proffered medical bills. *Id.* The Supreme Court granted transfer, affirmed the judgment, and ordered remittitur, taking into consideration the discounted amount paid.

Later, in *Allen v. Clarian Health Partners, Inc.*, 980 N.E.2d 306 (Ind. 2012), uninsured patients brought a class action against the hospital alleging breach of contract and seeking a declaration that the rates the hospital billed were unreasonable and unenforceable. The appeal arose from a motion to dismiss granted to the hospital by the trial court. *Id.*

There the patients argued that the chargemaster rates imposed by the hospital were unreasonable such that they constituted a breach of contract. The contract provided as follows:

> In consideration of services delivered by Clarian North Medical Center and/or the physicians, the undersigned guarantees payment of the account, and agrees to pay the same upon discharge if such account is not paid by a private or governmental insurance carrier . . . . If the amounts due Clarian North Medical Center for services rendered become delinquent and the debt is referred to an attorney for collection it is

understood and agreed that I shall be responsible for reasonable attorneys' fees, court costs, and prejudgment interest.

*Id.* at 309.

[21] The patients argued that the contract did not specify a price for the medical services provided, or was silent on price, and as such a "reasonable price for the services" term should be imputed to the contract. *Id.*

[22] The Court agreed generally that where a contract is silent on price, a reasonable price should be imputed to a contract, but noted that an offer appearing to be indefinite may be given precision by usage of trade or by course of dealing between the parties. *Id.* In the context of contracts providing for health care services, the Court noted that precision concerning price is "close to impossible," that a hospital's chargemaster rates serve as the basis for its pricing, and they are unique because they are set by each hospital. *Id.* The Court noted the decision in *Stanley*, relied upon by the patients, and expressly declined to extend its holding about the evidentiary use of the reasonable value of medical expenses to actions alleging breach of contract. *Id.*

[23] Frost disagrees with the reasonableness of the charges claimed by the hospital, and directly challenges them by way of the Act, which explicitly allows for those challenges. Parkview sought to have its chargemaster rates deemed reasonable as a matter of law. The trial court's denial of Parkview's motion for partial summary judgment was premised on the language found in *Stanley* regarding the evidentiary use of discounted amounts paid for medical expenses. Although *Stanley* was a personal injury action where damages were the issue,

there are enough similarities that we agree with the trial court's reliance upon the reasoning in *Stanley*.

[24] In *Stanley*, referring to a damages determination, but discussing the reasonable value of medical expenses, the Court stated as follows:

> In sum, the proper measure of medical expenses in Indiana is the reasonable value of such expenses. This measure of damages cannot be read as permitting only full recovery of medical expenses billed to a plaintiff. *Id.* Nor can the proper measure of medical expenses be read as permitting only the recovery of the amount actually paid. *Id.* The focus is on the reasonable value, not the actual charge. This is especially true given the current state of health care pricing. . . . This value is not exclusively based on the actual amount paid or the amount originally billed, though these figures certainly may constitute evidence as to the reasonable value of medical services.

906 N.E.2d at 856-58.

[25] The Court cited Indiana Evidence Rule 413 as one method of proving the reasonable value of medical expenses. *Id.* The Rule provides as follows:

> Statements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements are prima facie evidence that the charges are reasonable.

Evid. Rule 413.

[26] Quoting *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 277-78 (Ind. 2003), the Court said:

The purpose of Rule 413 is to provide a simpler method of proving amount of medical expenses when there is no substantial issue that they are reasonable and were caused by the tort. If there is a dispute, of course the party opposing them may offer evidence to the contrary, including expert opinion. By permitting medical bills to serve as prima facie proof that the expenses are reasonable, the rule eliminates the need for testimony on that often uncontested issue. Finally, the fact that a statement was submitted is at least some evidence that the charge is normal for the treatment involved, and it was necessary to be performed.

906 N.E.2d at 856.

[27] The Court distinguished between the introduction of medical bills to prove the amount of medical expenses when there is no substantial issue that the medical expenses are reasonable and when there is.

Thus, medical bills can be introduced to prove the amount of medical expenses when there is no substantial issue that the medical expenses are reasonable. However, in cases where the reasonable value of medical services is disputed, the method outlined in Rule 413 is not the end of the story. *See Cook*, 796 N.E.2d at 277. The opposing party may produce contradictory evidence to challenge the reasonableness of the proffered medical bills, including expert testimony. *See id.*

*Id.*

[28] In *Stanley*, the Supreme Court determined that the defendant should have been allowed to introduce evidence of the discounted amount that was paid on behalf of the plaintiff in satisfaction of his account, an issue relevant to the determination of damages, to contradict the plaintiff's prima facie evidence. *Id.*

[29] Here, Parkview sought to have the trial court determine as a matter of law that the chargemaster rates were reasonable. That issue was disputed by Frost, who sought to discover discounted amounts Parkview had accepted from other patients in an effort to challenge the lien amount. By frustrating Frost's discovery efforts, Parkview prevented Frost from meeting Parkview's prima facie evidence of reasonableness with contradictory evidence. The trial court correctly found that Frost should be allowed to discover that evidence and that such evidence was admissible under the Act.

[30] In light of the foregoing, we affirm the trial court's decision.

[31] Judgment affirmed.

Vaidik, C.J. concurs.

Najam, J., dissents with separate opinion.

Parkview Hospital,

*Appellant-Defendant,*

v.

Thomas E. Frost, et al.,

*Appellee-Plaintiff.*

Court of Appeals Case No.
02A03-1507-PL-959

**Najam, Judge, dissenting.**

[32]   I respectfully dissent from the majority's conclusion that the Hospital Lien Act allows an uninsured hospital patient to renegotiate the terms of his contract with the hospital.

[33]   This case is controlled by our supreme court's holding in *Allen v. Clarian Health Partners, Inc.* In *Allen*, uninsured patients executed contracts with the hospital under which they "guarantee[d] payment of the account[s]." 980 N.E.2d 306, 308 (Ind. 2012). After providing the patients care, the hospital attempted to collect its chargemaster rates against the patients. The patients sued the

hospital for breach of contract on the ground that their contracts did not specify a price for services and, as such, the patients could introduce evidence in court to determine a reasonable price as a matter of law.

[34] Our supreme court rejected the plaintiffs' complaint outright and held that they had failed to state a claim upon which relief can be granted. *Id.* at 309-10. In particular, the court held that the "price terms in these contracts, while imprecise, are not sufficiently indefinite to justify imposition of a 'reasonable' price standard." *Id.* at 310. The court then explicitly held that the patients' "agreement[s] to pay 'the account' . . . refer[] to [the hospital's] chargemaster. As a result, we cannot impute a 'reasonable' price term into th[ese] contract[s]." *Id.* at 311.

[35] Likewise here, it is undisputed that Frost, an uninsured patient of Parkview's, executed through his guardian a contract for medical services that obliged him "to pay the account." Appellant's App. at 44. Thus, under *Allen*, Frost agreed to pay Parkview's chargemaster rates, no matter how reasonable those rates may or may not have been and regardless of how those rates were determined. *Allen*, 980 N.E.2d at 310-11. It is also undisputed here that that same amount is the amount of Parkview's lien against Frost.

[36] The majority asserts that *Allen* is irrelevant here because "Frost is not challenging that a debt is due Parkview" and "Frost is not asking a court to impute a reasonable price into the contract where no price is stated . . . ." Slip op. at 6. I cannot agree. By challenging the reasonableness of Parkview's

chargemaster rates—the basis for Parkview's lien—Frost *is* challenging the amount of debt that, according to *Allen*, he has already agreed to pay, and he *is* asking a court to impute a new, "reasonable" contract price in place of his agreement to pay Parkview's chargemaster rates.

[37] The confusion here is understandable. Indiana Code Section 32-33-4-4(e) provides that "[a] person desiring to contest . . . the reasonableness of the charges claimed by a hospital [in its lien] may do so by filing a motion to quash or reduce the claim . . . ." In a vacuum, that language appears to permit patients against whom hospitals file liens to wholesale challenge the amount underlying the lien. But reading that language in that manner ignores our supreme court's holding in *Allen*.

[38] And, while *Allen* was not a hospital lien case, it is nonetheless binding here for a simple, pragmatic reason: if *Allen* does not apply, hospitals will simply stop seeking recovery of unpaid fees through hospital liens and instead seek recovery through breach of contract actions, where *Allen* is controlling. This end-run would obviate the Hospital Lien Act altogether. *See, e.g.*, *Cmty. Hosp. v. Carlisle*, 648 N.E.2d 363, 365 (Ind. Ct. App. 1995) (noting that, "[b]y allowing health care providers direct interests in funds collected by personal injury patients, the statute furthers the important policy of reducing the amount of litigation that would otherwise be necessary to secure repayment of the health care debts," and that, "by expressly allowing attorneys to collect their fees before satisfaction of all other liens," the statute enables "personal injury patients who are unable to pay for medical services" to hire a lawyer of their choice).

[39] Moreover, Indiana Code Section 32-33-4-4(e) can be interpreted in a manner consistent with *Allen*. In particular, the Hospital Lien Act provides that the amount underlying a lien:

> [b](5) must:
>
>> (A) first be reduced by the amount of any benefits to which the patient is entitled under the terms of any contract, health plan, or medical insurance; and
>>
>> (B) reflect credits for all payments, contractual adjustments, write-offs, and any other benefit in favor of the patient;
>
> after the hospital has made all reasonable efforts to pursue the insurance claims in cooperation with the patient.
>
> (c) If a settlement or compromise that is subject to subsection (b)(1) is for an amount that would permit the patient to receive less than twenty percent (20%) of the full amount of the settlement or compromise if all the liens created under this chapter were paid in full, the liens must be reduced on a pro rata basis to the extent that will permit the patient to receive twenty percent (20%) of the full amount.

I.C. § 32-33-4-3. In other words, if a hospital files a lien that fails to properly account for the benefits in favor of the patient, or to account for the patient's right to receive at least twenty percent of a settlement or compromise, or is similarly unreasonable, the patient can challenge the reasonableness of the amount of the lien pursuant to Indiana Code Section 32-33-4-4(e).[2] But what Indiana Code Section 32-33-4-4(e) does not authorize is a renegotiation of the original contract terms.

---

[2] In his brief, Frost asserts that the subparts of Indiana Code Section 32-33-4-3 are "prerequisites to filing a lien in the first place." Appellee's Br. at 11 (emphasis removed). Frost's argument here is hard to follow; surely he does not suggest that Section 32-33-4-4(e) prohibits review of the hospital's accounting.

[40] I am not persuaded that, in light of *Allen*, the holding in *Stanley v. Walker* has any application to this matter. *Stanley* involved the evidence a tortfeasor could introduce to attempt to reduce the injured party's claim of damages. 906 N.E.2d 852, 858 (Ind. 2009). That simply is not this case. *See Allen*, 980 N.E.2d at 311 ("We decline to extend *Stanley* to actions for breach of contract.").

[41] Finally, I respectfully disagree with the Indiana Supreme Court's premise and holding in *Allen*. *See Allen v. Clarian Health Partners, Inc.*, 955 N.E.2d 804, 809 (Ind. Ct. App. 2011) (Najam, J.), *vacated*. There was, simply, no factual basis in *Allen* for the assumption that chargemaster rates represented a rational—let alone a reasonable—value of medical services in the health care marketplace. *See id.* at 812 n.5 ("[the hospital] considers its chargemaster rates confidential and proprietary. Left unanswered by [the hospital] is how a patient and a provider can mutually agree to an 'unambiguous' and 'express' chargemaster fee schedule that is not available to the patient."). As our supreme court has recognized in other contexts, "the relationship between [a hospital's] charges and costs is tenuous at best." *Stanley*, 906 N.E.2d at 857 (internal quotation marks omitted).

[42] Health care is not an option but a necessity. Yet health care prices are an enigma:

> Unlike everything else we buy, when we purchase a medical treatment, surgery[,] or diagnostic test, we buy blind. We do not know the cost of health procedures before we buy. When we do get the bill, we have no idea what the charges are based on and have no way to evaluate them.

Tina Rosenberg, *Revealing the Health Care Secret: The Price*, N.Y. Times: Opinionator, July 31, 2013, http://opinionator.blogs.nytimes.com/2013/07/31/a-new-health-care-approach-dont-hide-the-price/. Indiana media have also recognized that "hospitals, doctors[,] and health insurers have been playing a game of hide-and-seek with the public on health care prices . . . ." J.K. Wall, *Hospitals, Insurers Should End Hide-and-Seek with Prices*, Indianapolis Bus. J., June 14, 2013, http://www.ibj.com/blogs/12-the-dose/post/41959-hospitals-insurers-should-end-hide-and-seek-with-prices. Indeed, few people on the planet understand how health care prices are determined. *Id.*

[43] Thus, in its operation and effect, *Allen* places health care consumers, including emergency-room patients, at a permanent, take-it-or-leave-it disadvantage. *Allen* immunizes a hospital's unilateral pricing scheme from an evaluation or comparison by individual consumers or the marketplace at the front-end and then leaves those same consumers without recourse from a trier of fact at the back-end. Given that there is no price transparency, to insinuate chargemaster rates into an agreement "to pay the account" cannot possibly represent a meeting of the minds between the contracting parties. Chargemaster rates are not per se reasonable when they are, first, confidential and, second, incomprehensible. In sum, there is no discernable or reliable correlation between chargemaster rates and the reasonable value of the health care services provided.

[44] Further, under the holding in *Allen*, the uninsured disproportionately bear the costs for health care. The Washington Post recently recognized that "hospitals

in the United States are charging uninsured consumers more than 10 times the actual cost of patient care . . . ." Lena H. Sun, *50 Hospitals Charge Uninsured More Than 10 Times Cost of Care, Study Finds*, Wash. Post, June 8, 2015, https://www.washingtonpost.com/national/health-science/why-some-hospitals-can-get-away-with-price-gouging-patients-study-finds/2015/06/08/b7f5118c-0aeb-11e5-9e39-0db921c47b93_story.html. As one academic authority has plainly stated, *Allen* is "oblivious to patients' vulnerability and dependency." Mark A. Hall, *Toward Relationship-Centered Health Law*, 50 Wake Forest L. Rev. 233, 248 (2015).

[45] I believe the majority's statutory analysis would be correct, and I would concur, were it not for *Allen*, which is controlling authority. We are bound by Indiana Supreme Court precedent, but I encourage the Indiana Supreme Court to reconsider *Allen* given the opportunity. As such, I would reverse the trial court's judgment for Frost and remand with instructions for the court to enter judgment for Parkview.