NAJAM, Judge,
dissenting.
I respectfully dissent from the majority’s conclusion that the Hospital Lien Act allows an uninsured hospital patient to renegotiate the terms of his contract with the hospital.
This ease is controlled by our supreme court’s holding in Allen v. Clarian Health Partners, Inc. In Allen, uninsured patients executed contracts with the hospital under which they “guaranteed payment of the account[s].” 980 N.E.2d 306, 308 (Ind.2012). After providing the patients care, the hospital attempted to collect its chargemaster rates against the patients. The patients sued the hospital for breach of contract on the ground that their contracts did not specify a price for services and, as such, the patients could introduce evidence in court to determine a reasonable price as a matter of law.
Our supreme court rejected the plaintiffs’ complaint outright and held that they had failed to state a claim upon which relief can be granted. Id. at 309-10. In particular, the court held that the “price terms in these contracts, while imprecise, are not sufficiently indefinite to justify imposition of a ‘reasonable’ price standard.” Id. at 310. The court then explicitly held that the patients’ “agreements] to pay ‘the account’ ... refer[ ] to [the hospital’s] chai’gemaster. As a result, we cannot impute a ‘reasonable’ price term into th[ese] contracts].” Id. at 311.
Likewise here, it is undisputed that Frost, an uninsured patient of Park-view’s, executed through his guardian a contract for medical services that obliged him “to pay' the account.” Appellant’s App. at 44. Thus, under Allen, Frost agreed to pay Parkview’s chargemaster rates, no matter how reasonable those rates may or may not have been and regardless of how those rates were determined. Allen, 980 N.E.2d at 310-11. It is also undisputed here that that same amount is the amount of Parkview’s lien against Frost.
The majority asserts that Allen is irrelevant here because “Frost is not challenging that a debt is due Parkview” and
*811 “Frost is not asking a court to impute a reasonable price into the contract where no price is stated.... ” Op. at 807.1 cannot agree. By challenging the reasonableness of Parkview’s chargemaster rates — the basis for Parkview’s lien — Frost is challenging the amount of debt that, according to Allen, he has already agreed to pay, and he is asking a court to. impute a new, “reasonable” contract price in place of his agreement to pay Parkview’s chargemas-ter rates. ti
‘The confusion here is understandable. Indiana Code Section 32-33-4-4(e) provides that “[a] person desiring to contest ... the reasonableness of the charges claimed by a hospital [in its lien] may do so by filing a motion to quash or reduce the claim .... ” In a vacuum, that language appears to permit patients against whom hospitals file liens to wholesale challenge the amount underlying the lien. But reading that language in that manner ignores our supreme court’s holding in Allen.
And,' while Allen was not a hospital lien case, it is nonetheless binding here for a’ simple, pragmatic reason: if Allen does not apply, hospitals will simply stop seeking'recovery of unpaid fees through hospital liens and instead seek recovery through breach of contract actions, where Allen is controlling. This end-run would obviate the Hospital Lien Act altogether. See, e.g., Cmty. Hosp. v. Carlisle, 648 N.E.2d 363, 365 (Ind.Ct.App.1995) (noting that, “[b]y allowing health care'providers direct interests in funds collected by personal injury patients, the statute furthers the important policy of reducing the amount of litigation that would otherwise be necessary to secure repayment of the health care debts,” and that, “by expressly allowing attorneys to collect their fees before satisfaction of all other liens,” the statute enables “personal injury patients who are unable to pay for medical services” to hire a lawyer of their choice);
Moreover, Indiana Code Section 32-33-4-4(e) can be interpreted in a manner consistent with Allen. In particular, the Hospital Lien Act provides that the amount underlying a lien:
[b](5) must:
(A) first be reduced by the amount of any benefits to which the patient is entitled under the terms of any contract, health plan, or medical insurance; and
(B) reflect credits for all payments, contractual adjustments, write-offs, and any other benefit in favor of the patient;
after the hospital has made all reasonable efforts to pursue the insurance claims in cooperation with the patient.
(c) If a settlement or compromise that is subject to subsection (b)(1) is for an amount that would permit the patient to receive less than twenty percent (20%) of the full amount of the settlement or compromise if all the liens created under this chapter were paid in full, the liens must be reduced' on a pro rata basis to the extent that will permit the patient to receive twenty percent (20%) of the full amount.
I.C. § 32-33-4-3. In other words, if a hospital files a lien that fails to properly account for the benefits in favor of the patient, or to account for the patient’s right to receive at least twenty percent of a settlement or compromise, or is similarly unreasonable, the patient can challenge the reasonableness of the amount of the lien pursuant to Indiana Code Section 32-33^-4(e).[2] But what Indiana Code Sec *812 tion 32-33-4-4(e) does not authorize is a renegotiation of the original contract terms. •
I am not persuaded that, in light of .Allen, the holding in Stanley v, Walker has any application to this matter. Stanley involved the evidence a tortfeasor could introduce to attempt to reduce the injured party’s claim of damages. 906 N.E.2d 852, 858 (Ind.2009). That simply is not this casfe. See Allen, 980 N.E.2d at 311 (“We decline to extend Stanley to actions for breach of contract.”).
Finally, I respectfully disagree with the Indiana Supreme Court’s premise and holding in Allen. See Allen v. Clarian Health Partners, Inc., 955 N.E.2d 804, 809 (Ind.Ct.App.2011) (Najam, J.), vacated. . There was, simply, no factual basis in Allen-tor the assumption that chargemaster rates represented a rational — let alone a reasonable-value of medical servicfes in the health care marketplace. See id. at 812 .n, 5 (“[the hospital] considers its chargemaster rates confidential and proprietary. Left unanswered by [the hospital] is how a patient and a provider can mutually agree to an, ‘unambiguous’ and ‘express’ chargemaster fee schedule that is not available to the patient.”). As our supreme court has recognized in, other contexts, “the relationship between [a hospital’s] charges and costs is tenuous at best.” Stanley, 906 N.E.2d at 857 (internal quotation marks omitted),.
Health care is not ah option but a necessity. Yet health care prices are- an enigma:
Unlike everything else we buy, when we purchase a medical'treatment, surgery[,] or diagnostic test, we buy blind. We do not know the cost of health procedures before we buy. When we do get the bill, we have no idea what the charges are based on and have no way to evaluate them.
Tina Rosenberg, Revealing the Health Care Secret: The Price, N.Y. Times: Opin-ionator, July 31, 2013, http://opinionator.-blogs.nytimes.com/2013/07/31/a-new~ health-care-approach-dont-hide-the-price/. Indiana media have also recognized that “hospitals, doctors[,] and health insurers have been’playing a game of hide-and-seek with the public on health care prices,... ” J.K. Wall, Hospitals, Insurers Should End Hide-and-Seek with Prices, Indianapolis Bus. J., June 14, 2013, http://www.ibj.com/ blogs/12-the-dose/post/41959-hospitals- . - insurers-should-end-hide-and-seek-with-prices. Indeed, few people on the planet understand how health care prices are determined. Id.
Thus, in its operation and effect, Allen places health - care consumers, including emergency-room patients, at a permanent, take-it-or-leave-it disadvantage, Allen immunizes a hospital’s unilateral pricing scheme from an evaluation or comparison by individual consumers or the marketplace at the front-end .and then leaves those same consumers without recourse from a trier of fact at the back-end. Given that there is no price transparency, to insinuate chargemaster. rates into-an agreement “to pay the account” cannot possibly represent a meeting of the minds between the contracting parties.,. Charge-master rates are , not per se reasonable when they are, first, confidential and, second, incomprehensible.. In sum, there is no. discernable or reliable correlation between chargemaster rates and the reasonable value of the health care services provided.
Further, under the holding in Allen, the .uninsured disproportionately bear *813 the costs for health care. The Washington Post recently recognized that “hospitals in the United States are charging uninsured consumers more than 10 times the actual cost of patient care_” Lena H. Sun, 50 Hospitals Charge Uninsured More Than 10 Times Cost of Care, Study Finds, Wash. Post, June 8, 2015, https://www. washingtonpost.com/national/health-science/why-some-hospitals-can-getaway-with-price-gouging-patients-study-fmds/2015/06/08/b7f5118c-0aeb-lle5-9e39-0db921c47b93_story.html. As one academic authority has plainly stated, Allen is “oblivious to patients’ vulnerability and dependency.” Mark A. Hall, Toward Relationship-Centered Health Law, 50 Wake Forest L.Rev. 233, 248 (2015).
I believe the majority’s statutory analysis would be correct, and I would concur, were it not for Allen, which is controlling authority. We are bound by Indiana Supreme Court precedent, but I encourage the Indiana Supreme Court to reconsider Allen given the opportunity. As such, I would reverse the trial court’s judgment for Frost and remand with instructions for the court to enter judgment for Parkview.

. In his-brief, Frost asserts that the subparts of Indiana Code Section 32-33-4-3 are "prerequisites to filing a lien in the first place.” Appellee's Br. at 11 (emphasis removed). *812 Frost’s argument here is hard to follow-; surely he does not suggest that Section 32-33-4-4(e) - prohibits review of the hospital’s- accounting.