Miguel **VILLEGAS, et al.,** Appellants–Plaintiffs,

v.

Joel **SILVERMAN, in his official capacity as Commissioner of the Indiana Bureau of Motor Vehicles,** Appellee–Defendant.

No. 49A02–0410–CV–823.

Court of Appeals of Indiana.

Aug. 12, 2005.

Rehearing Denied Oct. 21, 2005.

Kenneth J. Falk, Indiana Civil Liberties Union, Rafael Ramirez, Richard Shevitz, Scott Gilchrist, Cohen and Malad LLP, Indianapolis, for Appellants.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

This is a class action against the Commissioner of the Indiana Bureau of Motor Vehicles brought by three illegal aliens (collectively, "the plaintiffs") who are unable to obtain State of Indiana driver licenses[1] and/or identification cards from the Bureau of Motor Vehicles ("BMV") because of new identification requirements, which were enacted in 2002 without promulgation. The trial court granted summary judgment in favor of the BMV. Specifically, the trial court found that the plaintiffs lacked standing, that it did not have the power to review the BMV's identification requirements, and that there was no merit to the plaintiffs' constitutional challenge to the requirements. We conclude that the plaintiffs have standing to challenge the new identification requirements. In addition, we conclude that the identification requirements constitute an administrative rule, which was not promulgated pursuant to the Indiana Administrative Rules and Procedures Act ("ARPA"), Indiana Code § 4–22–2 et seq. Because the requirements were not promulgated in accordance with the ARPA, they are void and without effect. We therefore reverse the trial court.[2]

### Facts and Procedural History

On Friday, July 12, 2002, the BMV announced that effective Monday, July 15, 2002, applicants for Indiana driver licenses, permits, and identification cards would have to present certain documentation proving their identity before obtaining such cards.[3] The new identification requirements are vastly different from the previous ones.[4] The BMV decided to tighten its requirements because of recent increases in identity fraud. See Appellants' App. p. 81–82. The BMV announced its change in the identification requirements by press conference and by publication. Before the BMV's announcement of this change, there was no promulgation pursuant to the ARPA.

Currently, all new issuances for Indiana driver licenses, permits, and identification cards require applicants to present the following documentation:

- One Primary Document

- One Proof of Social Security Number[5]

- One Secondary Document

- One Proof of Indiana Residency Document

- A Primary or Secondary Document may also meet the Indiana residency requirement as long as the applicant's

---

1. The parties refer to them as "driver's licenses." However, Title 9 of the Indiana Code refers to them as "driver licenses" or "driving licenses." Accordingly, we choose to use the term "driver licenses."

2. We held oral argument in the Court of Appeals' courtroom on July 27, 2005. We commend counsel for their excellent presentations.

3. The requirements have been modified several times since this initial date; however, they have not been modified since November 2003.

4. Before July 15, 2002, applicants for Indiana driver licenses, permits, and identification cards had to amass six points by producing various types of documents. See Appellants' App. p. 97 (listing documents and corresponding point values).

5. Applicants for identification cards are not required to present social security documentation.

name and correct address are shown on the document

OR

- Two Primary Documents
- One Proof of Social Security Number
- One Proof of Indiana Residency Document [6]

**Primary documents include the following:**

United States Birth Certificate with stamp or seal issued from:

- County Department or County Board of Health Vital Records/Statistics Division from the applicant's state of birth
- State Department or State Board of Health Vital Records/Statistics Division from the applicant's state of birth
- United States State Department
- United States Territories—American Samoa, Guam, Puerto Rico, and Virgin Islands

Certification of Report of Birth DS–1350

United States Consular Report of Birth FS–240

United States Certificate of Naturalization/Citizenship

Valid United States Military/Merchant Marine Photo ID

Valid United States Passport

Acceptable INS [7] Documentation:

- Valid foreign passport with a Visa that includes a valid I–94 in the passport indicating the duration of stay in the United States
- Employment Authorization Card I–688B

- Employment Authorization Card I–766
- I–94 Stamped with "Section 207" Refugee Status
- I–94 Stamped with "Section 208" Asylum Status
- Permanent Resident Card I–551
- Temporary I–551 stamp
- Temporary Resident Card I–688
- Re–Entry Permit I–327
- Refugee Travel Document I–571
- Other INS documentation subject to BMV Driver Services approval

**Secondary Documents include the following:**

- Bank Statement
- Certified Academic Transcript
- Confirmation of Registration Letter from an Educational Institution
- Court documentation with stamp or seal in applicant's name
- Foreign Consulate–Issued ID Card
- Government–Issued License or ID Card
- Hoosier RX Plan Card with imprinted name
- Indiana County Pre-sentence Investigation Report with clerk stamp or seal
- Indiana Gun Permit (Valid)
- Indiana Probation Photo ID Card
- Indiana Professional/Occupational license (Valid)
- Indiana BMV Title Application with BMV Valid Stamp
- Indiana BMV Title or Registration (Valid)

---

**6.** We note that the identification requirements are less stringent for Renewals/Amendments and Duplicates. *See id.* at 387–88.

**7.** As of March 1, 2003, the INS (Immigration and Naturalization Service) transitioned into the Department of Homeland Security as the United States Citizenship and Immigration Services. Nevertheless, we use INS throughout this opinion.

- Insurance Card
- Letter from Probation Officer or county caseworker on letterhead stationary, certified with court or county stamp or seal with the applicant's name, and signature of the probation officer
- Major Credit or Bank Card (MC, Visa, AE, and Discover ONLY) (Valid)
- Original Out–of–State Driver Record
- Out–of–State Driver License, Identification Card or Permit with photograph
- Pay Check Stub—computer generated
- Prison Release Documentation/Photo ID
- School Report Card (dated within 12 months)
- School Photo ID Card
- Selective Service Acknowledgement Card–SSS Form 3A
- United States Divorce Decree certified by court of law with stamp or seal
- United States Application of Marriage/Record of Marriage (Certified Copy). Must contain the stamped seal and be signed by the Clerk.
- United States District Court Presentence Investigation Report with clerk stamp or seal
- United States Military Discharge or DD214 Separation papers
- United States Veterans Universal Access ID card with photo
- W–2 Form (Federal or State) or 1099 Federal tax form

*See id.* at 387–89.

The plaintiffs in this case, all illegal aliens, filed a complaint for declaratory and injunctive relief against the Commissioner of the BMV alleging that the new identification requirements have prevented them from obtaining Indiana driver licenses and/or identification cards. Specifically, the complaint alleges:

> This is a class action complaint challenging the defendant's new rule for obtaining driver's licenses, learner's permits, and state identification in Indiana. In contrast to earlier practice which properly interpreted Indiana law as only requiring applicants to demonstrate their identity, the new rule, which has been implemented without notice or rule-making, requires applicants to, among other things, demonstrate that they possess a valid United States passport or acceptable documentation from the Immigration and Naturalization Service (hereinafter "INS"), regardless of proof of identity. The rule, which makes it impossible for certain persons to obtain a license, permit or state identification, regardless of proof of identity, is both unconstitutional and unlawful.

Appellants' Br. p. 46.

The facts surrounding the individual plaintiffs are as follows. Miguel Villegas entered the United States without documentation. He does not have a social security number. He had an Indiana identification card, but it expired. He also wants a driver license. "Betty Doe"[8] entered the United States without inspection and documentation. She does not have a social security number. Betty Doe had an Indiana driver license, but it was stolen. She requests that her driver license be reissued. Likewise, "Mary Smith"[9] entered the United States without inspection and documentation and does not have a social security number. Her goal is to obtain an identification card and ultimately a driver license.

---

**8.** "Betty Doe" is an anonymous name.

**9.** "Mary Smith" is an anonymous name.

The complaint was filed in August 2002—approximately one month after the new identification requirements went into effect—but has been twice amended, the last time in June 2003. The plaintiffs also filed a motion for class certification. In March 2004, the plaintiffs filed a motion for summary judgment, and the BMV responded by filing a cross-motion for summary judgment. Following a hearing, the trial court issued Findings of Fact, Conclusions of Law and Judgment in September 2004. Specifically, the trial court concluded that the plaintiffs were not eligible for driver licenses and therefore there was "no standing." Appellants' App. p. 16. The trial court also concluded that it did not have the power to review the BMV's identification requirements and that there was no merit to the plaintiffs' constitutional arguments. As a result, the trial court held that the "plaintiffs shall take nothing by way of their complaint, and this case be, and is hereby, dismissed." *Id.* at 17. In addition, the trial court granted the plaintiffs' motion for class certification in a nunc pro tunc order. In that order, the trial court defined the class as follows:

> [A]ll current and future persons in Indiana who are, or who will be, required by defendant to produce information concerning their citizenship or immigration status in order to obtain an Indiana driver's license or permit or a state identification card, but who are, or will be, unable to produce the identification mandated by the Indiana Bureau of Motor Vehicle's non-promulgated identification requirements.

*Id.* at 393. The plaintiffs now appeal the dismissal of their class action.

## Discussion

The plaintiffs contend that the trial court erred in granting summary judgment in favor of the BMV. When reviewing a grant or denial of summary judgment, our standard of review is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Embry v. O'Bannon,* 798 N.E.2d 157, 159 (Ind.2003). Where the dispute is one of law rather than fact, our standard of review is de novo. *Embry,* 798 N.E.2d at 159.

## I. Standing

The plaintiffs first argue that the trial court erred in concluding that there was no standing. Standing refers to the question of whether a party has an actual demonstrable injury for purposes of a lawsuit. *Patterson v. Seavoy,* 822 N.E.2d 206, 210 (Ind.Ct.App.2005). To establish standing, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and that the injury is a result of the defendant's conduct. *Alexander v. PSB Lending Corp.,* 800 N.E.2d 984, 991 (Ind.Ct. App.2003), *trans. denied.* In a class action, each named plaintiff must have standing. *See id.* at 992 ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other unidentified members of the class to which they belong and purport to represent.") (quotation omitted). We divide our discussion of standing into two subsections: driver licenses and identification cards.

### A. Driver Licenses

The record shows that each of the plaintiffs desires an Indiana driver license. The trial court concluded that Villegas does not have standing because he "is not eligible for an Indiana driver's license because he is currently suspended.... This failure to be currently eligible ... demon-

strates that the plaintiff cannot demonstrate the requisite injury[.]" Appellants' App. p. 15. The trial court appears to have concluded that Betty Doe and Mary Smith do not have standing because they do not have "a valid social security card." *Id.* We note, however, that Villegas also does not have a social security card. The BMV argues on appeal that the trial court "correctly determined that the named plaintiffs did not have standing to challenge [the] BMV's identification requirements for applicants for driver licenses" because Indiana Code § 9–24–9–2 "requires that applicants for driver's licenses provide a social security number on the application, and the named plaintiffs did not have social security numbers." Appellee's Br. p. 10. Accordingly, the BMV's argument continues, since the plaintiffs cannot obtain driver licenses because they do not have social security numbers, then they are not injured by the new identification requirements. In other words, the BMV argues that it is not the new identification requirements that preclude the plaintiffs from receiving a driver license but rather state statute requiring a social security number that precludes them from receiving a driver license.

■ Indiana Code § 9–24–9–2 provides in pertinent part:

Each application for a license or permit under this chapter must require the following information:

(1) The name, date of birth, sex, *Social Security number,* and mailing address and, if different from the mailing address, the residence address of the applicant. The applicant shall indicate to the bureau which address the license or permit shall contain.

(emphasis added). The BMV asserts that because Indiana Code § 9–24–9–2 requires applications for driver licenses and permits to contain social security numbers, if the application does not contain a social security number, then that applicant cannot obtain a driver license or permit. This ignores the fact that if an applicant has never been issued a social security number, the BMV allows that applicant to fill out a BMV Social Security Affidavit, which is "only to be used by an applicant who is attesting that they have never been issued a Social Security Number." [10] Appellants' App. p. 390 (emphasis in original). After filling out the affidavit, the applicant may receive a driver license despite not having a social security number. The person designated to speak for the BMV at the deposition in this case, Karen Cothron, confirmed that this special procedure exists. *See id.* at 82. Because a special procedure exists for applicants who have never been issued social security numbers to obtain driver licenses, the fact that the plaintiffs do not have social security numbers does not preclude them from receiving Indiana driver licenses. The plaintiffs are unable

---

10. The BMV makes a rather strange argument on appeal. Specifically, it argues that its *own* policy of allowing applicants who have never been issued social security numbers to fill out an affidavit to that effect should not "override state law" requirements of including social security numbers on driver license applications. Appellee's Br. p. 18. To this day, the BMV's website provides, "If the applicant does not have a Social Security Number, the applicant must complete the BMV Social Security Affidavit." *See Indiana Bureau of Motor Vehicles Identification Docu-*

*mentation List and Instructions, available at* http://www.in.gov/ bmv/driverlicense/ idreq. html (last accessed Aug. 2, 2005). This weighs strongly against the BMV's argument on appeal that a social security number is required to obtain Indiana driver licenses. We also note that an administrative agency's interpretation of a statute it is charged with enforcing is given considerable deference. *See Indiana–Kentucky Elec. Corp. v. Comm'r, Ind. Dep't of Envtl. Mgmt.,* 820 N.E.2d 771, 775 (Ind.Ct.App.2005).

to obtain driver licenses because of the new identification requirements; therefore, they have suffered concrete and direct injury because of the identification requirements and have standing to challenge these requirements. Accordingly, the trial court erroneously determined that there was no standing based on the fact that none of the plaintiffs have social security numbers.[11]

As for the fact that Villegas's driver license is currently suspended, which arguably impacts whether he is in *immediate* danger of suffering an injury because he cannot now obtain a driver license, *see Area Plan Comm'n, Evansville–Vanderburgh County v. Hatfield,* 820 N.E.2d 696, 699 (Ind.Ct.App.2005), *trans. denied,* we note that Villegas also desires an identification card. Therefore, even if Villegas does not have standing regarding a driver license, as explained more fully below, he has standing to challenge the identification requirements for an identification card. In any event, Smith and Doe have standing to challenge the identification requirements for driver licenses.

### B. Identification Cards

■ The record shows that Villegas and Smith also desire to obtain Indiana identification cards. The BMV asserts on appeal that the "Marion Superior Court did not address the question whether the Plaintiffs had standing to challenge the BMV's identification requirements relating to identification cards." Appellee's Br. p. 21. Accordingly, the BMV asks us to remand the case to the trial court for resolution of this issue because otherwise we would be rendering an advisory opinion. *See Richardson v. Calderon,* 713 N.E.2d 856, 863 (Ind.Ct.App.1999) ("Generally, we will consider only those issues which were briefed and argued by the parties before the trial court and which the trial court considered and ruled upon."), *trans. denied.* Despite the BMV's request for us to remand the case, we note that the issue of identification cards was before the trial court. Additionally, the trial court addressed the merits of the plaintiffs' complaint.

We note that there is no requirement that applicants present a social security number before obtaining identification cards. *See* Ind.Code §§ 9–24–16–1, –2; *see also* Appellants' App. p. 99, 387. Cothron, the BMV representative in this case, admitted as much during her deposition. *See* Appellants' App. p. 82–83. Therefore, the trial court's rationale in concluding that there was no standing regarding driver licenses simply does not apply to identification cards. Because Villegas and Smith have been precluded from obtaining identification cards, they have demonstrated an actual injury and therefore have

---

**11.** On May 11, 2005, President Bush signed into law H.R. 1268. Title II of H.R. 1268 is titled Improved Security for Drivers' Licenses and Personal Identification Cards. Pursuant to this new law, the federal government—beginning three years after enactment—may not accept for any official purpose a driver's license or identification card issued by a state to any person unless the state meets certain requirements. The requirements include, among others: (1) "Proof of the person's social security account number or verification that the person is not eligible for a social security account number;" and (2) "evidence of lawful status." Appellants' Add. p. 2. In addition, H.R. 1268 provides that no later than September 11, 2005, participating states are to enter into a memorandum of understanding with the Secretary of Homeland Security to use an automated system set up by the federal government "to verify the legal presence status of a person, other than a United States citizen, applying for a driver's license or identification card." *Id.* at 3. This new federal law has no impact on the BMV's current system, although it may impact future changes.

standing to challenge the identification requirements for such cards.

## C. Unclean Hands

▮▮▮▮ The trial court also found that Doe and Smith had "unclean hands" and therefore could not challenge the new identification requirements because they "intentionally relied on a false social security number when attempting to establish an identity." [12] *Id.* at 16. The principle of unclean hands is that "he who comes into equity must come with clean hands." *Wedgewood Cmty. Ass'n v. Nash,* 781 N.E.2d 1172, 1178 (Ind.Ct.App.2003) (quotation omitted), *clarified on reh'g,* 789 N.E.2d 495 (Ind.Ct.App.2003), *trans. denied.* The doctrine of unclean hands is not favored and must be applied with reluctance and scrutiny. *Id.* For this doctrine to apply, the misconduct must be intentional, and the wrong that is ordinarily invoked to defeat a claimant by using the unclean hands doctrine must have an "immediate and necessary relation" to the matter before the court. *Id.* (quotation omitted).

Even assuming that Doe and Smith used false social security numbers when attempting to establish their identity, which they contest on appeal, they are not being denied driver licenses and/or identification cards because of that fact. A social security number is not required to obtain an identification card, and a special procedure exists to obtain a driver license when an applicant has not been issued a social security number. Rather, Doe and Smith are unable to obtain driver licenses and/or identification cards because of the new identification requirements. Therefore, Doe and Smith's alleged wrong does not have an "immediate and necessary rela-

tion" to the matter before the court; the clean hands doctrine does not bar their challenge.

Because each of the named plaintiffs has standing, we now proceed to the merits of the class action.

## II. The Merits of the Class Action

On appeal, the State does not address the merits of the plaintiffs' complaint. Rather, the State asserts:

> The trial court did not decide any of the questions raised by the Plaintiffs concerning the merits of their challenge to the documentation procedures used by BMV to ensure identity. The trial court simply decided that the Plaintiffs did not have standing and that the court did not have jurisdiction. ... Accordingly, the Commissioner of the BMV does not address the arguments advanced by the Plaintiffs on the merits in this brief.

Appellee's Br. p. 23. We find the State's position on this point to be unfounded. The trial court issued the following relevant Findings of Fact and Conclusions of Law:

> 3. Although the public was notified of the BMV's identification requirements, no formal notice of public hearing or promulgation pursuant to Ind.Code § 4–22–2 took place.

> \* \* \* \* \*

> 7. In addition to protecting the public highways from incompetent drivers, the State also has a legitimate interest in not allowing its governmental machinery to be a facilitator for the concealment of illegal aliens. The interest is one that weighs heavily on the Courts

---

**12.** The record shows that during her deposition, Smith, upon the advice of her attorney, took the Fifth Amendment when asked if she had used a false social security number on an employment application. The record also shows that Doe's BMV record contains a false social security number.

due to their role in the administration of the nation's legal system.

8. Illegal aliens, such as plaintiffs, are not a suspect class implicating constitutional scrutiny under the complementary equal protection clause of the United States Constitution and privileges and immunities clause of the Indiana Constitution. Illegal, or undocumented, aliens do not have the immutable characteristic of a truly suspect class because their status is the product of conscious, indeed, unlawful action.

9. The plaintiffs cannot demonstrate any injury recognized by the abovesaid Constitutional provisions based on their illegal status in this country.

\* \* \* \* \*

11. For further grounds, if the Court would invalidate the identification requirements for applications for driving licenses, it would have no conclusive effect on the BMV's administration of the application process. Ind.Code § 9–24–11–2 directs the Bureau to be "prudent" when issuing licenses.

12. Being prudent in the issuance of licenses is a power bestowed on the BMV by statute and is incapable of being reviewed by this Court due to its discretionary characteristic.

Appellants' App. p. 10, 16–17. We find that these findings of fact and conclusions of law indicate that the trial court addressed more than mere standing and indeed reached the merits of the plaintiffs' complaint. We therefore proceed to the merits.

The plaintiffs argue that the new identification requirements represent an administrative "rule," which should have been promulgated pursuant to the ARPA. *See generally Indianapolis Downs LLC v. Ind. Horse Racing Comm'n,* 827 N.E.2d 162 (Ind.Ct.App.2005) (distinguishing the ARPA, which governs administrative rules, from the Indiana Administrative Orders and Procedures Act ("AOPA"), which governs administrative orders). "[A]dministrative agencies may make reasonable rules and regulations to apply and enforce legislative enactments." *Indiana–Kentucky Elec. Corp. v. Comm'r, Ind. Dep't of Envtl. Mgmt.,* 820 N.E.2d 771, 779–80 (Ind.Ct.App.2005); *see also Ind. Dep't of Envtl. Mgmt. v. Twin Eagle LLC,* 798 N.E.2d 839, 847 (Ind.2003). The legislative enactment here is Indiana Code § 9–24–11–2, which provides that the BMV "may issue all permits and licenses required by law for the operation of a motor vehicle in a manner the bureau considers necessary and prudent."

However, an administrative agency may only regulate by a new rule if the proper rulemaking procedures have been followed. *Twin Eagle LLC,* 798 N.E.2d at 847; *Indiana–Kentucky Elec. Corp.,* 820 N.E.2d at 780. Thus, in establishing new rules, an administrative agency must comply with the ARPA, which includes provisions for public hearings and review by executive branch officials.[13] *Twin Eagle LLC,* 798 N.E.2d at 847–48; *Indiana–Kentucky Elec. Corp.,* 820 N.E.2d at 780. On the other hand, agency actions that result in resolutions or directives that

---

**13.** Specifically, the ARPA's provisions include, among others: (1) publishing notice of intent to adopt rule (Ind.Code § 4–22–2–23); (2) publishing notice of hearing (Ind.Code § 4–22–2–24); (3) conducting public hearing and allowing comments (Ind.Code § 4–22–2–26); (4) formally adopting the rule (Ind.Code § 4–22–2–29); (5) obtaining approval from the Attorney General (Ind.Code §§ 4–22–2–31, –32); (6) obtaining approval from the Governor (Ind.Code §§ 4–22–2–33, –34); and (7) submitting the rule to the Secretary of State for filing (Ind.Code § 4–22–2–35).

relate to internal policy, procedure, or organization and do not have the effect of law are not subject to the same requirements. *Twin Eagle LLC*, 798 N.E.2d at 848; *Indiana–Kentucky Elec. Corp.*, 820 N.E.2d at 780; *see also* Ind.Code § 4–22–2–13(c)(1) ("This chapter does not apply to a rulemaking action that results in any of the following rules: (1) A resolution or directive of any agency that relates *solely* to internal policy, internal agency organization, or internal procedure and does not have the effect of law.") (emphasis added).

■ In sum, an administrative agency must comply with the rulemaking procedures outlined in the ARPA only if they are promulgating a rule. Therefore, we must determine whether the BMV's new identification requirements constitute a rule. Indiana Code § 4–22–2–3(b) defines a "rule" as:

[T]he whole or any part of an agency statement of general applicability that:

(1) has or is designed to have the effect of law; and

(2) implements, interprets, or prescribes:

(A) law or policy; or

(B) the organization, procedure, or practice requirements of an agency.

Characteristics of a rule were enunciated in *Blinzinger v. Americana Healthcare Corp.*, 466 N.E.2d 1371 (Ind.Ct.App.1984). In *Blinzinger*, we found that a rate fee directive adopted by the Indiana Department of Public Welfare was a rule because: (1) it was an agency statement of general applicability to a class; (2) it was applied prospectively to the class; (3) it was applied as though it had the effect of law; and (4) it affected the substantive rights of the class. *Id.* at 1375.

The identification requirements here indeed constitute a rule. They are agency statements of general applicability that are designed to have the effect of law and implement the BMV's policy of tightening the requirements to obtain new issuances of Indiana driver licenses, permits, and identification cards.[14] The requirements are designed to have the effect of law because if an applicant does not produce the necessary documentation, then he or she cannot obtain a driver license, permit, or identification card. The requirements apply prospectively to all applicants seeking new issuances of driver licenses, permits, and identification cards as of a certain date. In fact, the record shows that an applicant who was able to obtain a driver license before July 15, 2002, was not able to obtain a license once the new identification requirements went into effect. Additionally, the requirements implement the BMV's policy of trying to prevent identity fraud.

The new identification requirements do not relate primarily to the BMV's internal policies, procedures, or organization. The primary impact of the identification requirements is external, and it is the primary impact that is paramount. *See Ind. Dep't of Envtl. Mgmt. v. AMAX, Inc.*, 529 N.E.2d 1209, 1213 (Ind.Ct.App.1988). For example, in *Conquest v. State Employee's*

14. For instance, the BMV's website provides: For many individuals, a Driver License or Identification Card issued by the Indiana Bureau of Motor Vehicles (BMV) is the most important means of proving their identity. The Bureau of Motor Vehicles endeavors to safeguard the integrity of driver documents and to protect the public from false and/or fraudulent applications. In accordance with Indiana Code [§ ] 9–24–18–2, making a false or fraudulent application is a criminal offense punishable by imprisonment, fine and license suspension. *See Indiana Bureau of Motor Vehicles Identification Documentation List and Instructions, available at* http://www.in.gov/bmv /driverlicense/ idreq.html (last accessed Aug. 2, 2005).

*Appeals Commission,* 565 N.E.2d 1086, 1088 (Ind.Ct.App.1991), *trans. denied,* the trial court found, and this Court agreed, that the Indiana Department of Correction's policy concerning parole officers' home visits with parolees affected primarily the parole officers' work hours and therefore was an internal policy, not a rule. In contrast, here it is clear that the identification requirements primarily impact applicants seeking new issuances of driver licenses, permits, and identification cards because it sets forth what is essential for them to obtain such cards.

 We finally note the trial court's determination that even if it were to invalidate the identification requirements, the result would be the same. The trial court reasoned that Indiana Code § 9–24–11–2 directs the BMV to issue licenses in a manner the Bureau considers necessary and prudent and that such prudence is incapable of judicial review. Thus, if the rule were improperly promulgated, then there would be no harm because the courts could not review the rule the Bureau enacted anyway. We do not agree for two reasons. First, the rules implemented by the BMV are always judicially reviewable for constitutional implications.[15] Second, the ARPA requires rules to be adopted in accordance with the requirements of Indiana Code chapter 4–22–2. *See* Ind. Code § 9–15–2–1(3). These requirements dictate, among other things, public input into any proposed rule changes. The duty of the BMV to issue licenses in a manner that it deems prudent does not supercede the mandate to allow the public to participate in the rule-making process.

We hold that the new identification requirements are a rule, and because they were not promulgated in accordance with the ARPA, they are void and without effect. *See Indiana–Kentucky Elec. Corp.,* 820 N.E.2d at 781; *Blinzinger,* 466 N.E.2d at 1375. The trial court erred by entering summary judgment in favor of the BMV. We therefore remand this case with instructions for the trial court to enter summary judgment in favor of the plaintiffs.

Reversed and remanded with instructions.

MAY, J., and BARNES, J., concur.

---

15. The plaintiffs argue that even if the BMV had properly promulgated the rule, it would nevertheless be invalid because it exceeds statutory authority. The plaintiffs—citing various statutory citations—assert that no statute in Title 9 requires applicants to present either a United States birth certificate or documentation of the applicant's immigration status; therefore, the BMV's rule cannot require such documentation. Because the BMV did not properly promulgate the rule, we do not reach this issue.

In addition, the plaintiffs argue that the new identification requirements violate the Due Process Clause, the Equal Protection Clause, and the Supremacy Clause of the United States Constitution. Because the requirements are void and without effect, we do not address these constitutional arguments. To do so would be to render an advisory opinion. We have no way of knowing whether the BMV in the future will promulgate the same identification requirements or different ones.