FILED
Jun 01 2017, 5:35 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

David W. Frank
Christopher C. Myers & Associates
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Stephen R. Creason
Chief Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Roy Lee Ward,

*Appellant-Plaintiff,*

v.

Robert E. Carter, Jr.,
Commissioner of the Indiana
Department of Correction, and
Ron Neal, Superintendent of the
Indiana State Prison, in their
official capacities,

*Appellees-Defendants*

June 1, 2017

Court of Appeals Case No.
46A03-1607-PL-1685

Appeal from the LaPorte Circuit
Court

The Honorable Thomas J.
Alevizos, Judge

Trial Court Cause No.
46C01-1512-PL-2154

**Baker, Judge.**

Roy Lee Ward is an Indiana inmate on death row. In 2014, the Department of Correction (DOC) internally adopted a new method of lethally injecting inmates; the new method includes a cocktail of drugs that has never been administered in an execution in the United States. Ward filed a claim seeking injunctive and declaratory relief, arguing that the DOC was required to promulgate this new policy as a rule under the Administrative Rules and Procedure Act (ARPA).[1] The State filed a motion to dismiss the claim, which the trial court granted. Ward now appeals. Finding that the General Assembly has not exempted the DOC from ARPA and that the statutory definition of "rule" clearly includes the DOC's execution protocols, we reverse.

# Facts[2]

In 2007, Ward was sentenced to death by execution in Indiana. He is currently imprisoned at Indiana State Prison in LaPorte County. State officials, through the DOC, administer all state executions, which occur by the intravenous injection of lethal substances. In May 2014, State officials announced that they had adopted a new rule in their execution protocol. The new rule was not promulgated under ARPA but was instead adopted informally as an internal DOC policy.

---

[1] Ind. Code ch. 4-22-2 et seq.

[2] We held oral argument in Indianapolis on May 17, 2017. We thank counsel for both parties for their written and oral presentations.

[3]     This new rule, which was effective immediately, provided that all prisoners sentenced to death in Indiana (including Ward) would be executed by a new combination of three drugs—methohexital (known by the brand name Brevital), pancuronium bromide, and potassium chloride. No prisoner of any state nor of the federal government has ever been executed with this particular combination of drugs.

[4]     On December 22, 2015, Ward filed a complaint seeking injunctive relief and a declaratory judgment. His essential argument was that because this new rule was not promulgated under ARPA, it is unlawful and violates his rights under ARPA and his right to due process under the state and federal constitutions. On March 29, 2016, the State filed a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6), arguing that Ward had failed to state a claim on which relief could be granted. Essentially, the State contended that ARPA did not apply to the adoption of this new rule and that, consequently, no due process violation had occurred. Following a hearing, the trial court granted the motion and dismissed Ward's complaint.[3] Ward now appeals.

## Discussion and Decision

[5]     We apply a de novo standard of review to a trial court's order granting a Rule 12(B)(6) motion to dismiss a complaint for failure to state a claim. *Allen v.*

---

[3] In its order, the trial court relied heavily on federal cases grounded in arguments related to cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Appellant's App. p. 12-13. Ward, however, is not making an argument related to the Eighth Amendment.

*Clarian Health Partners, Inc.*, 980 N.E.2d 306, 308 (Ind. 2012). A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the facts supporting it. *Id.* In conducting our review, we must take all allegations of the complaint as true, construing them in the light most favorable to the plaintiff, to determine whether the complaint states any facts upon which the trial court conceivably could have granted relief. *Id.* We will reverse an order granting such a motion if there is any set of circumstances under which a plaintiff would be entitled to relief. *Id.*

[6] Ward argues that the method in which the State adopted this new execution policy violated his rights under ARPA and his due process rights under the state and federal constitutions.

## I. Relevant ARPA Provisions

[7] Under ARPA, a "rule" is defined as follows:

> [T]he whole or any part of an agency statement of general applicability that:
>
> > (1)     has or is designed to have the effect of law; and
> >
> > (2)     implements, interprets, or prescribes:
> >
> > > (A)     law or policy; or
> > >
> > > (B)     the organization, procedure, or practice requirements of an agency.

Ind. Code § 4-22-2-3(b). An administrative rule is one that has (1) general applicability; (2) prospective application; (3) the effect of law; and (4) affects a class of individuals' rights. *Blinzinger v. Americana Healthcare Corp.*, 466 N.E.2d 1371, 1375 (Ind. Ct. App. 1984).

[8] An Indiana agency takes "rulemaking action" when it engages in "the process of formulating or adopting a rule." I.C. § 4-22-2-3(c). When an agency takes rulemaking action, it must promulgate the rule according to the process set forth in ARPA, with certain exceptions. I.C. § 4-22-13(a). Relevant to this case is an exception stating that an agency does not have to comply with ARPA if the rulemaking action results in "[a] resolution or directive . . . that relates solely to internal policy, internal agency organization, or internal procedure and does not have the effect of law." I.C. § 4-22-2-13(c)(1).

[9] To enforce compliance, ARPA creates individual rights in the administrative procedure, voids the legality of unlawfully adopted agency rules, and provides a cause of action in the instance a state agency violates the law's provisions. I.C. §§ 4-22-2-14, -44, -45.

## II. Does ARPA Apply to the DOC?

[10] On appeal, the State abandons its position taken before the trial court and instead argues that ARPA does not apply to the DOC's execution protocols. The State directs our attention to the lethal injection statute, which provides, in relevant part, as follows:

(a)     The punishment of death shall be inflicted by intravenous injection of a lethal substance or substances into the convicted person:

   (1)     in a quantity sufficient to cause the death of the convicted person; and

   (2)     until the convicted person is dead.

                                    ***

(d)     The department of correction *may* adopt rules under IC 4-22-2 necessary to implement subsection (a).

Ind. Code § 35-38-6-1 (emphasis added). The State focuses on the word "may" in subsection (d), arguing that this permissive word means that, while the DOC has the option of promulgating execution protocol rules under ARPA, it is not required to do so.

[11]     We disagree. Initially, we note that the lethal injection statute must be read in conjunction with ARPA. ARPA explicitly excludes two state agencies from its provisions, and neither is the DOC. I.C. § 4-22-2-13(b) (excluding any military officer or board and any state educational institution from ARPA). If the legislature intended to exempt the DOC from the purview of ARPA altogether, or even to exempt the DOC's execution protocols, it could have easily done so, but it has not. The DOC insists that requiring it to comply with ARPA in the context of the death penalty is burdensome and unworkable. But it is not the role of the judiciary to determine the statutory obligations of State agencies; that

rests with the General Assembly. We can only conclude that, by omitting the DOC from the list of entities excluded from ARPA, the General Assembly has determined that the DOC is, indeed, bound to follow it.[4]

[12] Having reached that conclusion, the plain meaning of Indiana Code section 35-38-6-1(d) becomes clear. The DOC is not required to adopt rules. But if it chooses to do so, it is bound to follow ARPA. The DOC's approach would require us to ignore ARPA altogether, which we may not and shall not do. The legislature has determined that DOC is not exempt from ARPA; consequently, when it adopts rules, it must comply with the procedures set forth in ARPA.[5] What we must determine next, therefore, is whether the DOC's lethal injection protocol constitutes a rule.

---

[4] The DOC submitted a notice of additional authority, contending that this authority "evidences present legislative intent to further exempt from the ordinary practice of public access, administrative process, and discovery the decisions and details related to the process undertaken by the [DOC] leading up to the execution of a sentence of death." Notice of Add'l Auth. p. 1-2. This authority includes section 158 of House Enrolled Act (HEA) 1001, which (1) gives the DOC authority to enter into a contract for the issuance of substances used for lethal injection and (2) protects the identity of the person with whom DOC contracts for that purpose. In our view, HEA 1001 is not germane to the issue at hand, which is whether DOC must comply with ARPA. Therefore, we are not persuaded by this additional authority.

[5] The DOC emphasizes that death row inmates have the right to challenge the fact and method of their execution under Section 1983 and the Eighth Amendment to the United States Constitution. But the case before us is something entirely different—a civil suit against the State for alleged violations of administrative agency law, "and the cause of action he brings, and the rights he asserts, are recognized by the ARPA." Reply Br. p. 9. ARPA notes that the procedural rights it creates in citizens and the procedural duties it imposes on state agencies are "in addition to those created and imposed by other law." I.C. § 4-22-2-14. Therefore, the fact that Ward has other rights, under other statutes and constitutions, does not vitiate his rights under ARPA.

# III. Are DOC's Execution Protocols Rules?

When the parties argued this issue before the trial court, the State contended that changes in execution protocols were simply changes in internal agency policy rather than rules falling under ARPA. On appeal, the State is entirely silent on this argument. It does not contend that changes in execution protocols are internal agency policies, nor does it address Ward's contention that the execution protocols are rules.

As noted above, a "rule," for the purpose of ARPA, is

> [T]he whole or any part of an agency statement of general applicability that:
>
> > (1)    has or is designed to have the effect of law; and
>
> > (2)    implements, interprets, or prescribes:
>
> > > (A)    law or policy; or
>
> > > (B)    the organization, procedure, or practice requirements of an agency.

Ind. Code § 4-22-2-3(b). An administrative rule is one that has (1) general applicability; (2) prospective application; (3) the effect of law; and (4) affects a class of individuals' rights. *Blinzinger*, 466 N.E.2d at 1375.

It is readily apparent that the definition of "rule" encompasses the DOC's execution protocol. The protocol has general applicability (as opposed to

applicability only to a specific case) and prospective application. It has the effect of law in that it is binding on DOC employees and death row inmates. And it certainly affects a class of individuals' rights—all prisoners scheduled to be put to death in Indiana following the 2014 announcement.

[16]  In another case related to an agency policy that was changed without promulgating a rule under ARPA, this Court found that the changed policy did not "relate primarily to the [agency's] internal policies, procedures, or organization. The primary impact of the [new] requirements is external, and *it is the primary impact that is paramount*." *Villegas v. Silverman*, 832 N.E.2d 598, 609 (Ind. Ct. App. 2005) (emphasis added). Here, likewise, the primary impact of the change in execution protocols is external—its most significant impact is on the death row inmates who will be executed according to its terms. Although the State attempted to argue below that the primary impact of this policy is not on inmates such as Ward, we agree with Ward that "[i]t is unclear what, if any, effect a change in lethal injection substances would have on the state employees who execute prisoners" aside from a slight change in behavior in that the employees might have to reach into a different drawer, open a different package, or read an alternate list of instructions. Appellant's Br. p. 19.

[17]  The General Assembly has defined what a rule is in the context of ARPA. That definition clearly includes the DOC's execution protocol. A change in that execution protocol, therefore, is a new rule that may not be implemented until the DOC complies with ARPA. Given the legislature's determination that the DOC is not exempt from ARPA, as well as the way in which it has defined

"rule," we are compelled to reverse the trial court's order granting the dismissal of Ward's complaint.[6] As a matter of law, DOC must comply with ARPA when changing its execution protocol, and its failure to do so in this case means that the changed protocol is void and without effect.

[18] The judgment of the trial court is reversed and remanded for further proceedings.

Barnes, J., and Crone, J., concur.

---

[6] Because we have found that Ward's complaint prevails based on relevant statutory language, we need not consider his due process arguments.