ATTORNEYS FOR APPELLANT
David W. Frank
Christopher C. Myers & Associates
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Stephen R. Creason
Chief Counsel
Indianapolis, IN

# In the
# Indiana Supreme Court

FILED
Feb 13 2018, 11:54 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 46S03-1709-PL-00569

ROY LEE WARD,

*Appellant (Plaintiff below),*

v.

ROBERT E. CARTER, JR.,
COMMISSIONER OF THE INDIANA
DEPARTMENT OF CORRECTION, AND
RON NEAL, SUPERINTENDENT OF THE
INDIANA STATE PRISON, IN THEIR OFFICIAL
CAPACITIES.

*Appellees (Defendants below).*

Appeal from the LaPorte Circuit Court, No. 46C01-1512-PL-2154
The Honorable Thomas J. Alevizos, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 46A03-1607-PL-1685

**February 13, 2018**

**Goff, Justice.**

Plaintiff challenges the Department of Correction's change to Indiana's lethal injection protocol, arguing the combination of drugs used in executions is a substantive rule that must be promulgated pursuant to the Administrative Rules and Procedures Act. We disagree. Because the Department's decision to add Brevital to the lethal injection cocktail does not carry the effect of

law—that is, the change does not impose standards regulating Ward's conduct—we hold the new three-drug protocol is not a rule and, therefore, not subject to the Administrative Rules and Procedures Act.

**Factual and Procedural History**

Plaintiff, Roy Ward, sits condemned on Indiana's "death row" at Indiana State Prison in LaPorte County. Ward was sentenced to death by execution in 2007 for a 2001 rape and murder. See Ward v. State, 903 N.E.2d 946, aff'd on reh'g, 908 N.E.2d 595 (Ind. 2009), cert. denied, 559 U.S. 1038 (2010). The Indiana Code commands that "[t]he punishment of death shall be inflicted by intravenous injection of a lethal substance or substances into the convicted person." Ind. Code § 35-38-6-1(a) (2014 Repl.). The Code tasks the Indiana Department of Correction (the Department) with housing death-row offenders and administering executions by lethal injection. See I.C. chapter 35-38-6.

In May 2014, the Department announced a change to the lethal injection protocol. Specifically, the Department said it would alter the three-drug combination used for executions, replacing Sodium Thiopental with Brevital—a barbiturate anesthetic in the same class. Following that announcement, Indiana's three-drug execution protocol included Brevital, followed by Pancuronium Bromide and then Potassium Chloride.

On December 22, 2015, Ward filed a complaint in the LaPorte Circuit Court, naming as defendants Bruce Lemmon, then-Commissioner of the Department, and Ron Neal, the Superintendent of the Indiana State Prison.[1] The complaint alleged the Department's change to the lethal injection protocol violated Ward's rights under Indiana's Administrative Rules and Procedures Act (ARPA) along with his due course of law and due process rights under the Indiana and United States constitutions. All Ward's claims hinged upon his contention that the Department's new three-drug cocktail amounted to an administrative "rule" that must be adopted and promulgated pursuant to ARPA.

---

[1] At some point during this litigation Robert E. Carter, Jr., replaced Mr. Lemmon as Commissioner and was substituted as a proper party in this appeal pursuant to Indiana Appellate Rule 17(C)(1).

2

The Defendants moved to dismiss Ward's complaint under Trial Rule 12(B)(6), arguing it failed to state a claim upon which relief could be granted. Following a hearing, the trial court granted the State's motion. It concluded: "Defendants were not required to go through ARPA as changing a drug in the lethal injection protocol is considered an internal policy and not rule promulgation."

Ward appealed, and the Court of Appeals reversed the trial court's order dismissing the complaint. Ward v. Carter, 79 N.E.3d 383 (Ind. Ct. App. 2017). The Court of Appeals holding proved twofold. First, in response to a newly raised argument from the Defendants, the court held the Department must follow ARPA when promulgating rules. Id. at 387. Second, it held the Department's execution protocol constituted a "rule" and since the Department failed to follow ARPA's requirements when adding Brevital to the three-drug combination, "the changed protocol is void and without effect." Id. at 388.

The Defendants then sought transfer, which we granted, thereby vacating the Court of Appeals opinion. See Ind. Appellate Rule 58(A). The central issue presented in this case concerns whether the Department's lethal injection protocol constitutes a "rule" for ARPA purposes. Ward contends the protocol is a rule and, therefore, must go through ARPA's notice-and-comment rulemaking requirements. On the other hand, the Defendants maintain the lethal injection protocol is an internal Department policy exempt from ARPA's strictures. For the reasons set forth below, we agree with the Defendants and affirm the trial court.

**Standard of Review**

Since a 12(B)(6) motion to dismiss for failure to state a claim challenges only the legal sufficiency of the complaint, it presents a legal question that we review de novo. Thornton v. State, 43 N.E.3d 585, 587 (Ind. 2015). We may affirm a dismissal under 12(B)(6) "if it is sustainable on any basis in the record." Id.

**Discussion and Decision**

I. **Administrative rules carry the effect of law, which means they prescribe binding standards of conduct on a regulated person.**

ARPA governs agency rulemaking—i.e., adding, amending, or repealing administrative rules. Ind. Code § 4-22-2-13(a) (2012 Repl.). ARPA, however, does not apply to "[a] resolution or

directive of any agency that relates solely to internal policy, internal agency organization, or internal procedure and does not have the effect of law." Id. at §4-22-2-13(c)(1). The parties debate whether the Department's lethal injection protocol—specifically, the drug combinations used in executions—constitutes a rule or internal policy or procedure under the ARPA statute.

> ARPA defines "rule" accordingly:
>
> (b) "Rule" means the whole or any part of an agency statement of general applicability that:
>    (1) has or is designed to have the effect of law; and
>    (2) implements, interprets or prescribes:
>       (A) law or policy; or
>       (B) the organization, procedure, or practice requirements of an agency.

Id. at § 4-22-2-3(b). Case law defines an administrative "rule" similarly, laying out four elements: (1) "an agency statement of general applicability to a class;" (2) that is "applied prospectively to the class;" (3) that is "applied as though it has the effect of law;" and (4) that "affect[s] the substantive rights of the class." Villegas v. Silverman, 832 N.E.2d 598, 609 (Ind. Ct. App. 2005) (citing Blinzinger v. Americana Healthcare Corp., 466 N.E.2d 1371, 1375 (Ind. Ct. App. 1984)). We observe straightaway that both definitions share the "effect of law" element. What's more, we see the "effect of law" requirement distinguishes agency rules from internal policies or procedures. Compare I.C. § 4-22-2-3(b)(1) (instructing administrative rules carry the effect of law), with I.C. § 4-22-2-13(c)(1) (instructing that internal agency policies and procedures do not). Taken together, Indiana law instructs that agency rules must carry the "effect of law"—a term left largely undefined in our jurisprudence.

A. *To date, Indiana law provides an incomplete explanation for "effect of law."*

We first acknowledge that this Court's case law addressing the "effect of law" has been limited to cases involving the reach of our court rules. For example, over the past century, we routinely instructed that courts have power to adopt rules that "*have the force and effect of law*, and are obligatory upon the court, as well as upon the parties to causes pending before it." Magnuson v. Billings, 152 Ind. 177, 180, 52 N.E. 803, 803-04 (1899) (emphasis added). See also Rout v. Ninde, 111 Ind. 597, 598, 13 N.E. 107, 107-08 (1887); State v. Van Cleave, 157 Ind. 608, 609, 62 N.E. 446, 447 (1902); Epstein v. State, 190 Ind. 693, 697, 128 N.E. 353, 353 (1920); State ex rel. Spelde v. Minker, 244 Ind. 421, 422, 193 N.E.2d 365, 365 (1963). While we have not expanded upon that

principle, we recently rephrased it by stating court rules "have the force and effect of law . . . and are binding on both the court and all litigants." In re Adoption of J.T.D., 21 N.E.3d 824, 831 (Ind. 2014) (internal citations and quotation marks omitted). Overall, these cases instruct that a court rule governs more than procedure—a rule having "the effect of law" necessarily touches individual substantive rights too. See id. (stating that when a rule carries the "effect of law" litigants "have the right to assume that [the rule] will be uniformly enforced by the court, in conservation of their rights, as well as to secure the prompt and orderly dispatch of business") (quoting Magnuson, 52 N.E. at 804). Although we find this precedent instructive, we recognize its limitations since it considers court rules, not agency rules.

Our Court of Appeals had the opportunity to apply the term "effect of law" to agency rules in the ARPA case, Villegas v. Silverman, 832 N.E.2d 598. There, the court considered whether the Bureau of Motor Vehicles's documentation requirements for obtaining Indiana driver licenses, permits, and identification cards constituted an agency rule subject to ARPA's rulemaking procedures. Id. at 608-10. Considering both ARPA's and the common law's definition for "rule," the court concluded the BMV's "identification requirements . . . constitute a rule." Id. at 609.

As for the "effect of law" element specifically, the court determined "[t]he requirements are designed to have the effect of law because if an applicant does not produce the necessary documentation, then he or she cannot obtain a driver license, permit, or identification card." Id. The court did not unpack this statement, but we appreciate its value nonetheless. As we see it, the BMV's requirements carried the effect of law not just because they created rights or obligations, but because of who bore those rights or obligations—the individual, not the agency. Per the BMV requirements, the Villegas plaintiffs had to alter their conduct (provide certain documents) to receive the substantive benefits the law afforded (driver licenses, ID cards, or permits). And there was no latitude in compliance.

In support of its conclusion that the BMV's requirements represented an agency rule, the court went on to explain why the BMV's requirements did not amount to an agency resolution or directive, writing "[t]he new identification requirements do not relate primarily to the BMV's internal policies, procedures, or organization." Id. The court then focused on the requirements' impact: "The primary impact of the identification requirements is external, and it is the primary

impact that is paramount." Id. The court said that "the identification requirements primarily impact applicants seeking new issuances of driver licenses, permits, and identification cards because it [sic] sets forth what is essential for them to obtain such cards." Id. at 610.

From Villegas, we surmise that if an agency requirement primarily affects citizens' conduct, it has the effect of law and constitutes a rule. Alternatively, if the agency requirement primarily affects agency conduct (internal policies or procedure), then it is an agency directive or resolution without the effect of law. We recognize the Court of Appeals did not utilize its "primary impact" reasoning in the "effect of law" analysis, but we still find it instructive to our task here since the "effect of law" element distinguishes a rule from an internal policy or directive. In sum, gleaning what we can from Indiana jurisprudence, we understand that a rule having the "effect of law" primarily affects individuals' substantive rights or conduct and can be enforced in a court of law. But since Indiana courts have considered "effect of law" in very few cases, our case law remains incomplete. Consequently, we turn to United States Supreme Court precedent for guidance.

*B. United States Supreme Court "effect of law" precedent provides clarity.*

The Supreme Court laid the foundation for "effect of law" in Chrysler Corporation v. Brown, 441 U.S. 281, 301 (1979), when it said: "In order for a regulation to have the 'force and effect of law,' it must have certain substantive characteristics"— meaning it must "affect[] individual rights and obligations," id. at 302. That case, in part, presented the question of whether certain agency regulations have the force and effect of law for purposes of the Trade Secrets Act. Id. at 295. The Court explained that agency rules have procedural and substantive characteristics. Rules first must derive from legislative authority, id. at 302, and then be properly promulgated, id. at 303. However, the Court labeled the substantive component—affecting individual rights and obligations—the "important touchstone for distinguishing those rules that may be 'binding' or have the 'force of law.'" Id. at 302.

The Supreme Court built upon that cornerstone laid in Chrysler when it said the phrase "force and effect of law . . . 'connotes official, government-imposed policies' prescribing 'binding standards of conduct.'" Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 569 U.S. 641, 649 (2013) (quoting Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 229 n.5 (1995) (citation omitted) ("[T]he phrase 'having the force and effect of law' is most naturally read to 'refer to binding standards of conduct that

6

operate irrespective of any private agreement.'")). In American Trucking, the Court considered whether requirements adopted by the Port of Los Angeles carried the "effect of law" for purposes of federal preemption. Id. at 648-49. Specifically, the Port required that certain trucking companies enter into "concession agreements" that mandated the companies affix placards on some trucks and submit parking plans for unused trucks. Id. at 645. The Port prescribed penalties for noncompliance. For example, a company's failure to enter into these agreements could result in a "misdemeanor . . . punishable by a fine of up to $500 or a prison sentence of up to six months." Id. The Port's requirements left trucking companies with a choice, either conform their conduct to Port standards or face penalties. In determining whether the Port's requirements carried the "effect of law," the Court explained the phrase "targets the State acting as the State," that is, when the State regulates individual conduct. Id. at 650. In other words, if an agency rule acts as a coercive mechanism or wields coercive power over people, it carries the effect of law. See id. at 650-51. Ultimately, the Court held that since the Port's regulations imposed mandatory obligations on trucking companies, those regulations had the force and effect of law. Id. at 652.

Weaving together this federal and state precedent, we observe a common thread—a rule carrying the effect of law primarily affects individual rights and obligations by setting binding standards of conduct for persons subject to its authority. This "effect of law" concept manifests in everyday situations where Hoosiers must conform their conduct to meet agency standards. To be sure, when an agency standard requires citizens to alter their behavior—i.e., when it regulates their conduct—it necessarily affects the citizens' rights or obligations because it compels them to do something they would not do otherwise or face legal consequences for noncompliance. And so that agency standard carries the effect of law. We therefore settle on the following summation of the phrase "effect of law" for Indiana jurisprudence: An agency regulation carries the effect of law when it prescribes binding standards of conduct for persons subject to agency authority.

**II.     Since the Department's lethal injection protocol does not bind Ward's conduct, it does not have the effect of law.**

Ward's complaint alleged the Department's three-drug execution protocol amounted to a rule subject to ARPA's notice-and-comment rulemaking requirements. In support of that allegation, the complaint thrice stated: "The new rules have the effect of law." Notably, Ward attached and incorporated into the complaint five exhibits that either detail the lethal injection process or confirm

the Department purchased Brevital. Three of those five—Exhibits C, D, and E—are confidential or restricted Department documents that list the drugs approved for use in executions. Because Ward cabined his claim to the three-drug cocktail—specifically, adding Brevital—we confine our "effect of law" analysis to portions of those three exhibits that discuss the drugs approved for lethal injections. In other words, we must determine whether the Department's lethal injection three-drug protocol prescribes binding standards of conduct for condemned offenders. It does not. In our view, the exhibits Ward presented as Indiana's lethal injection process represent an internal policy or procedure, not an administrative rule having the effect of law.

Exhibit C, for example, is a three-page document that identifies what drugs are used for lethal injections and outlines how the Department obtains, stores, prepares, and administers them. It instructs that one of the drugs that could be used during an execution is Brevital. Exhibit C places no requirements on the condemned offender's conduct. Instead, it informs Department personnel what they must do to prepare and use the pharmaceuticals during a lethal injection.

Exhibit D is a longer Department document detailing the entire lethal execution protocol, including procedures the Department will use in the weeks, days, hours, and even minutes before an execution. But for our purposes here, we consider one paragraph in Exhibit D's Section F, which states, Department "[s]taff are trained by a licensed physician in the mixing, preparation, and administration of the Sodium Thiopental, Pentobarbital or Brevital, Pancuronium Bromide or Vecuronium and Potassium Chloride." Section F goes on to read: "In the event of an unavailability of a sufficient quantity of Sodium Thiopental from available resources, a sufficient quantity of Pentobarbital, or Brevital will be acquired and administered in the place of the Sodium Thiopental." Exhibit D's one paragraph discussing the drugs used during lethal injections in no way regulates the offender's behavior or conduct.

Exhibit E is a one-page document, akin to a checklist, designating and sequencing the drugs approved for lethal injections. Exhibit E directs that Sodium Pentothal, Pentobarbital, or Brevital must be placed in a yellow syringe, Pancuronium or Vecuronium must be placed in a blue syringe, Potassium Chloride must be placed in a red syringe, and Saline must be placed in a black syringe. Like Exhibits C and D, Exhibit E does not require an offender to do anything or alter his or her behavior in any way.

In our view, none of these exhibits primarily affect an offender's rights or obligations. No exhibit prescribes binding standards of conduct that condemned offenders, like Ward, must follow to vindicate a substantive right. Unlike the Villegas plaintiffs or the American Trucking companies, Ward is not required to alter his conduct in any way. He is not faced with a choice of conforming his conduct to Department standards or foregoing a substantive right—his fate remains unaltered. Rather, the exhibits outline what Department personnel must do. They relate to the Department's internal policies and procedures that bind Department personnel and no one else. We therefore conclude that the Department's lethal injection protocol, as evidenced by these exhibits, does not carry the effect of law. Consequently, we hold the Department's lethal injection procedures do not constitute rules under Section 4-22-2-3(b) and are exempt from ARPA's rulemaking strictures. Because we resolve Ward's claims on this narrow ground, we decline to address the Defendant's alternative, broader argument that the Department is free to decide whether to follow ARPA when promulgating rules governing executions by lethal injection.

We pause briefly to note that Ward does not raise an Eighth Amendment cruel-and-unusual-punishment argument here. His Indiana and federal constitutional claims cited only due process violations, which hinged upon whether the Department's lethal injection protocol amounted to a rule subject to ARPA. Since we hold the Department protocol does not carry the effect of law and therefore is not a rule subject to ARPA, his constitutional claims necessarily fail.

**Conclusion**

For these reasons, we affirm the trial court's judgment dismissing Ward's complaint.

Rush, C.J., and David, Massa, and Slaughter, JJ., concur.